## MARY M. CLANCY v. DENIS CLANCY.

*Marriage—Contract to live "as man and wife."*

Complainant and defendant signed a contract by which they mutually agreed, from thenceforth and forever, to live as *man and wife*, but each was to retain the right to buy, sell, and transfer his or her property without question from the other.

*Held,* to provide only for a concubinage intercourse between the parties, and not to be a valid contract under which either party can claim any rights.

. Appeal from Wayne. (Jennison, J.) Argued April 14, 1887. Decided June 9, 1887.

Appeal from order adjudging defendant guilty of contempt for non-payment of alimony. Order set aside and complainant's petition dismissed. The facts are stated in the opinion.

*James H. McDonald (Griffin & Warner,* of counsel), for complainant.

*Charles G. Smith (Albert J. Chapman,* of counsel), for defendant.

SHERWOOD, J. The complainant in this case, on the twelfth day of August, 1886, claiming to be the wife of the defendant, filed her complaint to obtain means of support from him, under How. Stat. § 6291, as amended by Act No. 149, Laws of 1885.

The complainant states that on or about the twenty-fourth day of March, 1886, at Detroit, in the county of Wayne and State of Michigan, she was "duly married" to Denis Clancy, defendant herein, and since said date they have lived together as *"man and wife;"* that the defendant, without any good and sufficient cause, and being possessed of a large amount

of property, consisting of farms, houses, stores, mortgages, notes, cash in bank, and other property within the State of Michigan, of the value at least of $180,000, and being possessed of an annual income of at least $8,000, has neglected and refused, and does wholly refuse, properly to provide for and suitably maintain her, and that she has no property of her own.

The prayer of the bill is as follows:

"That she may have allotted, assigned, and set apart, and decreed to her as alimony, the use of such part of the defendant's real and personal estate, or such proportion of his income or revenue, as the court may determine to be sufficient properly to support her, and, during the pendency of the proceedings, may require the defendant to pay such sums to carry on this proceeding, and for her support, as it shall deem necessary ; and that your orator may have such further and such other relief in the premises as shall be agreeable to equity and good conscience."

On the fourteenth day of August the defendant entered his appearance, and on the fourth day of September thereafter he caused to be filed the following answer:

"The answer of Denis Clancy, defendant, to the bill of complaint of Mary McCarthy Clancy, complainant.

"This defendant, Clancy, above named, for answer to the bill of complaint of the said Mary McCarthy Clancy, complainant, answering, says that he denies all and every part of said complainant's bill, and leaves her to the proof thereof, reserving to himself all and every benefit of demurrer thereto, upon the hearing thereof, as fully as if said defendant had first expressly demurred to said complainant's bill as insufficient in law. Wherefore he prays that said complainant's bill be dismissed, and that he have his costs in said cause most wrongfully sustained.

DENIS CLANCY.

"Charles G. Smith, solicitor for defendant."

Replication was duly filed, and the usual notice given for taking the testimony in the case in open court.

On the fourteenth of October, 1886, the complainant filed her petition for the allowance of temporary alimony and

solicitor's fees *pendente lite.* The petition states that the complainant, on the twenty-fourth day of March, 1886, made a contract of marriage with defendant; and that the contract she entered into upon that subject was as follows, viz.:

"DETROIT, March 24, 1886.

" An article of agreement made and entered into by and between Mrs. Mary McCarthy, of Chicago, Illinois, and Denis Clancy, of Detroit, Michigan. We mutually and jointly agree, from now henceforth and forever agree, to live as man and wife, but each party retains the right to buy, sell, and transfer their respective properties without question of the other party.

" Witness: Hugh Murray,      MRS. MARY McCARTHY.
           Emma Murray.      DENIS CLANCY."

The petitioner then avers that she and Denis "immediately began to cohabit together as man and wife, and from time to time have continued" to do so ever since; that she uses her own house, worth about $1,000, situate on Montcalm street as her homestead. The petition is very short.

In addition to the above facts, it states that the defendant's income from his Detroit property is over $300 per month, and that his property outside of the city is as much in amount as that located in Detroit; that, in consequence of incumbrances upon her house and lot, and the defendant's efforts to establish further lien upon it, she is unable to raise any money upon any security she could give upon it; that she is dependent upon her own labor for support, and expenses and money to carry on her suit against the defendant.

Upon the hearing of this petition, on the first day of November, 1886, the circuit judge entered the following order, viz.:

" On reading and filing the petition for temporary alimony, solicitor's fees, and expenses, and on motion of Jas. H. McDonald, solicitor for complainant, Chas. G. Smith, Esq., appearing for defendant, it is ordered that the defendant

pay to the solicitor for the complainant, as solicitor and counsel fee, the sum of seventy-five dollars, and the further sum of twenty-five dollars for expenses of complainant in preparing for trial of cause.

"It is further ordered that said payments be made within forty-eight hours.

"Wm. Jennison, Circuit Judge."

The defendant failing to pay these moneys, proceedings were instituted by complainant for contempt in not complying with the order of the court. These proceedings culminated in an order made by the circuit judge on the twentieth day of December, 1886, whereby the defendant was directed to pay the moneys mentioned in the order of November 1, within three days from the entry of the order, and, in default thereof, to stand committed to the county jail until such payment should be made, together with the costs of such proceedings; and that a commitment be issued accordingly. From this order defendant took his appeal to this Court, and the case is now before us for review upon this last order.

We do not deem it necessary to enter upon a discussion of the various proceedings resulting in the order complained of. In the view we take of the matter of the complainant's petition, a proper disposition of the case will not reach those questions. Both in the original and ancillary proceedings the validity of the claimed marriage lies at the foundation. The defendant's answer expressly denies the marriage, and the answer was filed more than a month before the petition was made for alimony and expenses. Still we find no allusion to that fact in any of the proceedings on the part of the complainant. Nowhere in any of the proceedings placed before us does the complainant allude to the defendant as her husband, nor is there any express averment, either in the complaint or in the petition, that the defendant is the husband of the complainant, nor that the complainant is the wife of the defendant, nor that the parties ever lived together

as husband and wife, nor cohabited together as husband and wife.

It is true, she says in her complaint that Denis Clancy and herself have lived together as man and wife. It appears, inferentially at least, that she was the wife of another before she claimed to have married Denis; and so far as all the averments in the complaint and petition are concerned, except the statement that she was "duly married" to Denis, they are quite as consistent with the complainant's living with him as his concubine as in the marriage relation.

During the period of about five months after their alleged marriage, and previous to complainant's filing her complaint, she avers defendant did not furnish her, in money or other things for her support, to an amount exceeding twenty-five or thirty dollars. There is really nowhere in the record anything indicating that the defendant ever did or intended to recognize the complainant as his lawful wife, or that she ever intended to recognize him as her lawful husband, except what appears in her allegation of marriage, and in the contract signed by the parties. The allegation of marriage, however, amounts to nothing, unless the agreement signed by the parties, and hereinbefore given, shall be found to constitute a valid marriage contract, for the reason that her allegations are based upon the fact that that instrument contains such a contract.

There is no averment in the complaint or petition that the parties had an interview upon the subject and entered into a contract of marriage, and made the written agreement presented as evidence of it, but both complaint and petition assert that the parties were married by the written agreement. This agreement, when examined and analyzed, will be found to provide only for a concubinage intercourse between the parties. It does not in terms purport to be a marriage agreement, nor an agreement to live together as husband and wife. It also expressly repudiates all property

rights arising from such relation. In no view that we have been able to take of this instrument can it be regarded as a valid contract of any kind, and no rights can be claimed by either party thereunder.

The order appealed from must therefor be set aside, and the complainant's petition be dismissed. No costs will be given.

CAMPBELL, C. J., and CHAMPLIN, J., concurred.

MORSE, J. (*dissenting*). It appears from the bill of complaint in this cause that the complainant and defendant entered into the following contract of marriage:

"DETROIT, March 24, 1886.

"An article of agreement made and entered into by and between Mrs. Mary McCarthy, of Chicago, Illinois, and Denis Clancy, of Detroit, Michigan. We mutually and jointly, from now henceforth and forever, agree to live as man and wife, but each party retains the right to buy, sell, and transfer their respective properties without question of the other party.

"Witness: Hugh Murray,    MRS. MARY MCCARTHY.
            Emma Murray,    DENIS CLANCY."

The bill avers this contract to be a marriage, which was consummated immediately after its execution by cohabitation, which continued from time to time up to the date of the filing of said bill. The majority of the Court hold that this is not a valid marriage. I cannot agree with them. It is not necessary in this State that any priest should bless the bans, or that any magistrate should join the hands of the couple entering into marriage, which is a civil contract. Nor is there any good policy to be subserved by requiring it. If two persons of opposite sex, in the presence of witnesses, declare their intention of marriage, and agree one with the other to take each other as husband and wife or man and wife, and follow such agreement by cohabitation, it is, between themselves and against the world, if they are of suitable age, and no impediments exist, a lawful marriage.

And every reason in favor of good morals and in the interest of the purity of society, requires that it shall be so. When this is the law, the designing villain, found so often in novels and sometimes in real life, cannot betray confiding innocence and love, and bring ruin and woe to the maiden and her family by a mock marriage,—by a pretended ceremony performed by some one personating a minister or a magistrate.

My brethren would make this contract an agreement of concubinage, against the consent of the woman, simply because the word "man" is used instead of "husband." This is the gist of the opinion of Mr. Justice SHERWOOD. I cannot so regard it in its language or its intent; and even if I thought either party so intended when it was made, I should consider it, in the absence of any fraud upon the part of the other party, my duty under the law, and in the interest of purity and justice, to hold them as legally married, and subject to all the duties and privileges that belong to and grow out of the marital relation. If one of the two intended to be married, and supposed it was marriage, under this contract, and entered into it without fraud upon the other, and the contract was followed by cohabitation, then the other, however wickedly he or she may have intended to enjoy the fruits of marriage under a deceptive or imperfect agreement without being bound thereby, must, in my opinion, be firmly held by the law as completely subject to the marriage bond as if a valid service had been held in church, or the ceremony graced by the presence and participation of a justice of the peace. The well-being of society in its most sacred relation of the sexes requires this, and any other ruling of the courts brings blight and misery to trusting innocence.

I can see no difference between the use of the word "man," in this contract, and the word "husband." The counsel for the defendant attempted to make a distinction between the meaning of the two words, and my Brother SHERWOOD seems

to have followed this play upon words in his opinion. I find the common acceptation of the term "man and wife" in every-day life, and even in our best literature, to be the same as "husband and wife." And its use is by all odds the most common. Webster gives as one of his definitions of "man," "a married man, a husband;" quoting a line from Addison, "Every wife ought to answer for her man." The intent of this contract was one of marriage; and, although that word is not used, the essence of it is there. They "mutually and jointly, from now henceforth and forever, agree to live as man and wife." The plain meaning of this language is not, as supposed or suspicioned by my Brother SHERWOOD, that the complainant agrees to live with defendant as the wife of some other man, but *forever* with him as his wife. Any other construction seems to me not only far fetched, but absurd.

Besides, there is no showing in the record that she was the wife of another man at the date of this contract. The only inference that she had ever been married to another arises from her designation in the contract as Mrs. Mary McCarthy. The natural and justifiable presumption from this is that she was a widow or divorced. It is not necessary or usual for a complainant to allege in her bill for a divorce that she was not committing bigamy when she entered into the marriage relation with defendant. Therefore the fact that she does not aver in her bill that she was a single woman or a widow when she made this contract has no tendency whatever to weaken her claim of a valid marriage. She avers a marriage. The defendant does not specifically deny it. He contents himself with a general denial of her bill in wholesale. He does not anywhere in the proceedings deny the making of this contract, or allege that he was induced by fraud or duress to enter into it. As the case stands here, he should be held to the natural and lawful consequences of his agreement until some good reason appears why he should not. It may also

be remarked as a little singular, if this contract was intended as one of concubinage and not of marriage, that the rights of each in the separate property belonging to them should have been reserved and retained. If the agreement was not of marriage, the property rights of either would not be disturbed by their living together, "from time to time," under it.

It is plain that marriage was intended and agreed upon before two witnesses, and that the agreement was perfected by cohabitation under and with reference to it. I am not here to presume that this woman entered into concubinage, voluntarily and for nothing.