FLAVIA M. T. PENDILL ET AL. V. ISAAC NEUBERGER.

[See 64 Mich. 220.]

*Witness—Facts equally within knowledge of deceased—Lease—Action for rent.*

1. In a suit by the heirs of a deceased person to recover rent, the defendant cannot testify to a conversation between himself and the deceased regarding the renting, such testimony being covered by the statute.[1]
2. In this case the charge of the court, as set forth in the opinion, correctly states the law of the case, and covers all that was necessary to be said to the jury.

Error to Marquette. (Grant, J.) Argued November 2, 1887. Decided November 10, 1887.

Assumpsit. Defendant bring error. Affirmed. The facts are stated in the opinion, and in 64 Mich. 220.

*Ball & Hanscom,* for appellant.

*F. O. Clark,* for plaintiffs.

CHAMPLIN, J. This action is assumpsit for rent claimed to be due upon a lease.

The plaintiffs are the heirs at law of James P. Pendill, deceased.

---

[1] How. Stat. § 7545; Act No. 139, Laws of 1885.

On February 1, 1885, defendant occupied a store and carried on business as a clothier in the National Bank building in the city of Marquette, Michigan. On the night of the day last named the bank building was destroyed by fire, and defendant was obliged to remove his stock of goods. On the next day he moved into the store of James P. Pendill, without, at the time, making any agreement as to occupancy or rent.

The main controversy in the case is whether the plaintiffs proved a contract of renting for a year, at the rate of $800, payable monthly.

The testimony is all returned in the bill of exceptions, and may be summarized as follows:

James Pendill testified that his father died March 9, 1885; that he is acquainted with defendant, Neuberger; that he rented the store in a block of buildings on Superior street of his father; that he went into the occupation of it February 2, 1885; that his father at that time was engaged in general merchandising in his store on Superior street; that the store had a dry-goods and grocery department in separate rooms connected by an arch; that he was in his father's employ, and had charge of his business, and was also his book-keeper; that Mr. Neuberger and his father had a conversation in his store, about renting the store occupied by Neuberger, about the second week after he went in, but he could recollect nothing as to what was said between them in regard to the store at that time.

That afterwards, and between the twentieth and twenty-eighth days of February, 1885, Neuberger came into the store and told his father he had come to see about the renting; that his father told him that he didn't believe he wanted to rent the store to him; that Neuberger wanted to know why, and his father said he didn't believe he wanted to keep it open, and told him that he didn't think he cared about renting the store to him; that Mr. Neuberger said he did expect

to keep it open; that he expected to put his brother Louis in there to sell the goods he had, the ready-made clothing, and he himself expected to occupy the Dwyer corner of Front and Superior streets with his tailoring department; that they said nothing further that referred to the renting of the store, any more than these objections, his father still insisting upon his objection, and Neuberger that he wanted the store; that his father got up, and then started and went into the back part of the store into the dry-goods department; that the conversation there he did not hear; that after being there some time they came up the store, and appeared to be still disputing, and Mr. Neuberger stepped to the grocery door, and partly opened it, and waited for his father to say something, and he said he would not do it, and Neuberger, as he opened the door, said, "Very well, I'll take it for a year," and witness' father said, "Very well," and turned around and started back.

That he kept his father's accounts of rents collected, and did the same thing for the heirs after his father's death; that Neuberger paid rent on the store; that he thinks the first payment was on the twenty-eighth day of February, when he gave him a check for $66.67; that his father was present at the time; that Mr. Neuberger made further payment by check dated April 4, 1885, $66.67, for which he gave him a receipt as follows:

"MARQUETTE, MICH.. April 4, 1885.
"Received of I. Neuberger, sixty-six 67-100 dollars for 1 mo. rent to April 2d.        J. P. PENDILL,
"$66.67.        per James."

That the defendant has never paid any more rent.

On cross-examination the witness testified as follows:

"I did not overhear the conversation between Neuberger and my father when they were in the back part of the store. If they made any agreement at that time with regard to the renting of the store, I do not know anything about its terms. All I know about any agreement of any kind is what

I have now stated with regard to the conversation about a lease, when Mr. Neuberger first came in, and what he said when he opened the door, and was about to go out.

" Mr. Neuberger vacated the store, I think, the fourth or fifth of April. I think he was moving out of the store, taking things out, at the time he gave me the check, on the fourth of April. He made an attempt to deliver up the key of the store to me several days after he had taken everything out. He came there to the store, and said he came to give me the key, but I refused to receive it. Afterwards a clerk in his store brought over a key, and I ordered him to take it back, and he took it. I was told that he came there after that, and left some keys. I don't know whether the keys of that door or not; I suppose so. I supposed it was the key to the store which he had left, and have never ascertained to the contrary, and still have the same supposition."

On redirect examination he testified:

"I refused to receive the key. This took place in the same store that the agreement was made in. I had charge of the store for the estate at that time. John Mullally, a clerk for Mr. Neuberger, brought in the key when I sent it back. I never consented to the key being left."

James Dwyer testified as follows:

" The defendant rented a store of me shortly after the burning of the National Bank building. When he was renting the store from me I asked him what he was going to do with Pendill's store, and he said he was going to keep that store to dispose of the damaged goods, and put nothing into the store that I rented him only the new goods from outside. I am not positive, but should think it was the latter part of March, 1885, when this conversation took place."

August Machts testified as follows:

" Was in the employ of James P. Pendill, deceased, in the spring and winter of 1885, as a clerk in the store.

"I am acquainted with the defendant. I heard a conversation between James P. Pendill and the defendant in the month of February, with regard to the renting the store that Neuberger was then occupying. I was right close by Neuberger when I heard the conversation. Neuberger and Pendill had been talking about renting the store, and I overheard Mr. Pendill say:

" 'Neuberger, I don't think I want to rent you that store. I want to rent that store to somebody for a length of time, for a year, and I want it kept open, too.'

"Neuberger replied:

" 'I am sorry you don't think more of my word than that. I want it for a year, and I'm going to keep it open, too. I place my brother in there, and I do my tailoring over on the Dwyer corner,—the other store.'

"After that they went away from where they stood, and went in the back part of the dry goods side. I did not hear any conversation that was had by them in the back part of the store. I was employed on the other side,—grocery side. I heard no other conversation between them that day. I was out on the sidewalk as Neuberger was going away. He came out of the grocery store, and stepped np to me, and says:

" 'Well, I have rented the store, but expected to get it for less. I expected to get it for $600 a year, but he charged me $300 a year.'

"He also repeated the same words about keeping it open outside. He says:

" 'My brother is going to stay here, and I am going over there.' "

The foregoing constitutes all the testimony introduced on the part of the plaintiffs relative to the contract of hiring.

The defendant introduced himself as a witness in his own behalf, and his counsel asked this question:

"What was the conversation that took place between you and James P. Pendill in the rear of his store, sometime in the latter part of February, 1885, relative to renting a store of, him?"

To which counsel for plaintiffs interposed an objection—

"That it was incompetent, for the reason that it appears that James P. Pendill is deceased, and testimony known equally to him could not be given by a living person."

The court excluded it as inadmissible under the statute. The same ruling was alleged as error when this case was before us on a former occasion (*Pendill v. Neuberger*, 64 Mich. 223), and we then held that the ruling was correct. We see no reason to change the decision we then made upon this point. *Downey v. Andrus*, 43 Mich. 65.

The witness Neuberger then testified that at the time he came out of the store, as testified to by James Pendill, he did not tell James P. Pendill, deceased, that he would rent his store for a year, nor did he rent his store for a year.

Under the testimony as above recited the circuit judge charged the jury as follows:

" *Gentlemen of the Jury:* The plaintiffs in this case have brought suit to recover for four months' rent, under an alleged lease which they have set out in their declaration, claiming rent at the rate of $66.67 a month, for the months of April, May, June, and July, or from April 2 until August 2, 1885.

" The plaintiffs have set forth their claim in a special count, as we call it, in their declaration. No recovery can be had under their other counts.

" The special count sets forth that the contract was made between this defendant and Mr. Pendill, in his life-time, for the rent of the store described in the declaration, for one year, commencing February 2, 1885.

" It is conceded by counsel for both sides that, in order to maintain their case, the plaintiffs must prove four things:

" 1. That the contract was to rent the property for a year.

" 2. That the rent was to commence February 2, 1885.

" 3. That the amount of rent was $800 a year.

" 4. That the rent was payable monthly.

" There was a lease of some kind between these parties, that is clear, because it appears undisputed that the defendant paid two months' rent. Now, the contract that the plaintiffs have set forth must be proved by them as they have set it forth, and, if they have failed to prove any one of the four things I have just spoken of, then the plaintiffs have failed to make out their case.

" The length of the contract must be determined from the testimony principally, if not entirely, of the witnesses James Pendill and Mr. Machts, on the part of the plaintiffs. Mr. Pendill, who made the contract, is dead. The contract was a verbal one; there was no writing about it. Therefore, any statements that were made by Mr. Pendill in his life-time, not in the presence of Neuberger, cannot be introduced in evidence; neither can Neuberger testify to any conversations between him and the deceased, Pendill. The law shuts out all those conversations. You are therefore left to determine

what the contract was between these parties, from the evidence or conversation they had in the presence of other parties.

"It is claimed by the plaintiffs that the witness James Pendill was in the store when the defendant, Neuberger, came in to see his father in regard to it. After talking awhile near the stove, they went into the back part of the store. We know nothing of what took place between Pendill and Neuberger at that time.

"It is claimed that when they came out, after that conversation, while the defendant was in or near the door, he said to Mr. Pendill, 'Very well, I will take it for a year;' and that Mr. Pendill, now deceased, replied, 'Very well.' Now, gentlemen, if you should find, from the evidence in this case, that that conversation took place between these two parties, that made a contract between them; in law, their minds met, and made a good and binding contract.

"Now, as bearing upon that, you will take into account all the other testimony in the case—the testimony of the witness Machts, as to what he heard, and as to what Neuberger told him. First, determine what Machts said, or what Neuberger said to Machts; determine whether he said to him, 'I have rented it for a year at $800,' or, 'I have rented it for $800 a year,' or, 'I have rented it at the rate of $800 a year.' If you find from the evidence that the witness said, 'I have rented the store at the rate of $800 a year,' that would not be evidence that he had rented it for the period of a year, but simply evidence of the rate at which he had rented it. So you will determine what the testimony was, what Neuberger said to Machts, as bearing upon what the arrangement was between the parties.

"The defendant denies that he made such statements to Mr. Pendill in the presence of the witness James Pendill, or to Mr. Machts; so you will have to determine largely whether or not this contract was for a year between these parties, from the testimony of these witnesses, taking into account all the conversation there was in regard to it, and the surrounding circumstances, if any, that will throw any light upon the controversy.

"The fact that the defendant paid two months' rent is no evidence of the length of time this contract was to run. It is just as consistent with the idea that it was a contract from month to month as a contract for a longer period; so that circumstance throws no light upon the question of the length of this contract for rent.

"If, however, you find that there was a contract for a year, under the instructions I have given you, then, in determining when the contract commenced, you would have a right to take into account the time at which the defendant went into the store, and the time for which he paid rent. That would be competent evidence for you to examine and consider in determining the period at which the rent commenced.

"It is not claimed that there was an express contract made between these parties at the time Mr. Neuberger took possession of the store, which is conceded, I believe, to be the second of February. It is claimed that the contract was made towards the latter part of February, at the time these conversations were had with the defendant. Now, it is for you to determine, if you find there was a conversation between them at that time, and a contract made,—it is for you to determine, from the evidence,—whether or not that contract referred back to the time at which the defendant went into the possession of the store, and for which it appears on or about that time he paid the rent.

"Now as to the payment. If you find from the evidence that the defendant paid the rent monthly for two months, you would have the right to infer, from that, that that was the period for which the payments were made. It is to be presumed that the defendant made payments in accordance with the terms of the contract, and if, therefore, he paid the rent for two months monthly, it is a fair deduction to be made that that was the agreement, and the time at which it was to be made. So, as to the amount, if you find, as I have said, that this contract was made between the parties for a year, then you would have a right to determine the amount that was paid each month. which would make it $800 a year. There is no other evidence, except the testimony of Mr. Machts, as to what the rent was, aside from that.

"The plaintiffs, gentlemen, must predominate. This is a civil case, and the plaintiffs, in order to entitle them to recover, must have a preponderance of evidence in their favor; it makes no difference how slight. If, when you have weighed all the testimony, you find it equally balanced,— that you should give as much credit to the testimony of the defendant as of the plaintiffs,—they cannot recover ; but, if you find there is a preponderance in favor of the plaintiffs, however slight, that gives them the right to recover; otherwise not."

Defendant's counsel then made the following statement and request :

"I understood the court to charge the jury that the fact of the payment of rent from the second day of February would be of itself some evidence tending to show when the term was to commence under the contract which was made the last of February. I ask the court to charge the jury that the payment of rent for the month of February, which was paid on the twenty-eighth of February, is not of itself any evidence as to the time when the contract, alleged to have been entered into on or about the twenty-eighth of February, was to commence."

*The Court.* "I refuse that request, Mr. Hanscom, and leave it under the instructions I have given them."

To which last refusal to charge the jury defendant's counsel did then and there except.

The court, further, upon his own motion, charged the jury as follows:

"Understand me, gentlemen, I have said to you that, in determining when this lease was to commence, you have a right to take into account and consider the time when the defendant went into possession, the time from which he paid the rent, and all other circumstances there are, which throw any light upon the question of when the lease was to commence."

We have inserted the charge of the court in full, because nine of the twelve assignments of error are directed against the charge of the court. We have duly considered these assignments of error, and are unable to agree with counsel for defendant that it contains any error, or that it does not plainly, properly, and correctly state the law of the case to the jury. It does not seem to us to be open to the criticism made by defendant's counsel, and urged upon us in the argument with great earnestness and plausibility. It covered all that was necessary to be said in order to present the law to jury, and there was no error in refusing to give the instructions asked to be given by defendant's counsel, and which were refused by the court.

The issues presented by the pleadings were exclusively questions of fact. The testimony was conflicting; but, if the

jury believed the testimony introduced by the plaintiffs, there was sufficient of it, together with proper and legitimate inferences to be drawn from the facts which the testimony established, to authorize the jury to find the issue submitted to them in favor of the plaintiffs.

The judgment of the circuit court is affirmed.

SHERWOOD and MORSE, JJ., concurred.

CAMPBELL, C. J., did not sit.