LORIMER *v.* LORIMER.

124  631
125  344
124  631
s83NW 609
124  631
f147  ¹519

1. COMMON-LAW MARRIAGE—EVIDENCE.

Evidence that plaintiff lived with decedent for many years as his wife, and that he spoke of and introduced her as such, was sufficient to go to the jury on the issue of a common-law marriage between them, although it appeared that they had at one time lived together in a state of concubinage, that no marriage ceremony was ever performed, that she was known by, and received and executed conveyances in, her maiden name, and that he executed conveyances describing himself as a bachelor.   GRANT, J., dissenting.

2. SAME.

An agreement to live together as husband and wife, though intended to be carried out, unless acted on by the parties actually living together and cohabiting as husband and wife, is not sufficient to constitute a common-law marriage.

3. SAME—ESTATE OF ALLEGED HUSBAND — EJECTMENT BY WIFE— PLAINTIFF AS WITNESS—COMPETENCY.

An action of ejectment by one claiming as the common-law wife of a decedent, against his heirs and the tenants of his administrator, all of whom deny the marriage, is within 3 Comp Laws 1897, § 10212, forbidding the opposite party, in a suit defended by the heirs of a deceased person, from testifying to matters which, if true, must have been equally within the knowledge of decedent.

4. SAME—ATTORNEY AND CLIENT — PRIVILEGED COMMUNICATIONS.

Where the marriage of plaintiff with a deceased person is in issue, an attorney cannot testify to statements by the deceased concerning his relations with plaintiff, made in the course of a consultation in regard to making provision for her.

5. TRIAL—EXAMINATION OF WITNESSES—TESTIMONY ON FORMER HEARING—COPIES.

The practice pursued at the trial of permitting counsel for plaintiff to hand to plaintiff's witnesses, without any apparent necessity or reason, a copy of their testimony as given on a former hearing, and thereafter to direct their attention to the subject-matter covered by the copies, was disapproved.

6. SAME—STIPULATION—QUESTIONS FORECLOSED.
   Defendants in ejectment cannot be heard to object that the
   lands described in the declaration are in the possession of
   several different persons, where an attorney for defendants
   agreed before commencement of suit that the question of
   possession would not be raised.

Error to Wayne; Donovan, J.   Submitted June 5, 1900.
Decided September 18, 1900.

Ejectment by Emily Lorimer against David Lorimer
and others.   From a judgment for plaintiff, defendants
bring error.   Reversed.

*James H. Pound,* for appellants.

*Flowers & Moloney,* for appellee.

MOORE, J.   This is an action of ejectment brought by
the plaintiff, who claims to be the widow, by virtue of a
common-law marriage, of Thomas Lorimer, deceased.
From a verdict in her favor, the defendants, who repre-
sent the estate of Thomas Lorimer, appeal.   It is the
claim of defendants that the testimony, construing it most
favorably for plaintiff, does not show a marriage between
the parties, and that the court should have directed a ver-
dict in favor of defendants for that reason.

The plaintiff was sworn as a witness.   Her testimony
shows that prior to 1882 she was a woman of the town,
and that Lorimer had illicit relations with her.   She says,
in substance, that in 1882 Mr. Lorimer said that he was
tired of the way in which they were living, and proposed
that they should live together as husband and wife, to
which she assented.   She says that no marriage ceremony
was performed, but that they lived together as husband
and wife, she keeping the house, and he furnishing it,
until the time of his death, in 1895; that they regarded
each other as husband and wife; and that Mr. Lorimer
from that time introduced her as his wife, and they treated
each other as husband and wife.   Many witnesses were

sworn whose testimony tended to corroborate her in rela-
tion to the manner in which they lived, and the representa-
tions made by Mr. Lorimer as to their relations.   Testi-
mony was introduced on the part of the defense tending
to show that plaintiff, up to the time of the death of Mr.
Lorimer, went by the name of Bellmore, and was so known
in the city directory; that she took a deed of land in that
name, and signed a conveyance, not long before the death
of Mr. Lorimer, by the name of Bellmore; that Mr.
Lorimer, who dealt largely in real estate, described him-
self in the various conveyances he made as a bachelor.

It is insisted on the part of the defendants that the
relationship was simply one of concubinage; citing *Clancy*
v. *Clancy*, 66 Mich. 202 (33 N. W. 889).  It was long
ago decided in this State that a marriage ceremony was
not necessary to constitute a valid marriage.   In *Hutchins*
v. *Kimmell*, 31 Mich. 126 (18 Am. Rep. 164), Justice
COOLEY, speaking for the court, said:

" But, had the supposed marriage taken place in this
State, evidence that a ceremony was performed ostensibly
in celebration of it, with the apparent consent and co-
operation of the parties, would have been evidence of a
marriage, even though it had fallen short of showing that
the statutory regulations had been complied with, or had
affirmatively shown that they were not.   Whatever the
form of ceremony, or even if all ceremony was dispensed
with, if the parties agreed presently to take each other for
husband and wife, and from that time lived together pro-
fessedly in that relation, proof of these facts would be
sufficient to constitute proof of a marriage binding upon
the parties, and which would subject them and others to
legal penalties for a disregard of its obligations.   This has
become the settled doctrine of the American courts, the
few cases of dissent or apparent dissent being borne down
by a great weight of authority in favor of the rule as we
have stated it.   *Fenton* v. *Reed*, 4 Johns. 52 (4 Am.
Dec. 244); *Jackson* v. *Winne*, 7 Wend. 47 (22 Am. Dec.
563); *Starr* v. *Peck*, 1 Hill, 270; *Rose* v. *Clark*, 8 Paige,
574; *In re Taylor*, 9 Paige, 611; *Clayton* v. *Wardell*, 4
N. Y. 230; *Cheney* v. *Arnold*, 15 N. Y. 345 (69 Am.
Dec. 609); *O'Gara* v. *Eisenlohr*, 38 N. Y. 296; *Pearson*

v. *Howey*, 11 N. J. Law, 12; *Hantz* v. *Sealy*, 6 Bin. 405; *Com.* v. *Stump*, 53 Pa. St. 132 (91 Am. Dec. 198); *Overseers of Poor of Newbury* v. *Overseers of Poor of Brunswick*, 2 Vt. 151 (19 Am. Dec. 703); *State* v. *Rood*, 12 Vt. 396; *Town of Northfield* v. *Town of Vershire*, 33 Vt. 110; *Duncan* v. *Duncan*, 10 Ohio St. 181; *Carmichael* v. *State*, 12 Ohio St. 553; *State* v. *Patterson*, 2 Ired. 346 (38 Am. Dec. 699); *Town of Londonderry* v. *Town of Chester*, 2 N. H. 268 (9 Am. Dec. 61); *Keyes* v. *Keyes*, 2 Fost. (N. H.) 553; *Bashaw* v. *State*, 1 Yerg. 177; *Grisham* v. *State*, 2 Yerg. 589; *Cheseldine's Lessee* v. *Brewer*, 1 Har. & McH. 152; *State* v. *Murphy*, 6 Ala. 765 (41 Am. Dec. 79); *Potier* v. *Barclay*, 15 Ala. 439; *Dumaresly* v. *Fishly*, 3 A. K. Marsh. 368; *Graham* v. *Bennet*, 2 Cal. 503; *Case* v. *Case*, 17 Cal. 598; *Patton* v. *Philadelphia*, 1 La. Ann. 98; *Holmes* v. *Holmes*, 6 La. 463 (26 Am. Dec. 482); *Hallett* v. *Collins*, 10 How. 174."

In *Peet* v. *Peet*, 52 Mich. 464 (18 N. W. 220), it was said:

"But an actual ceremony of marriage is not essential to the establishment of the relation of husband and wife. It is sufficient that a man and woman of due competency, and in respect to whom no impediment exists, consent to take each other as husband and wife, and actually cohabit as such. The case of *Hutchins* v. *Kimmell*, 31 Mich. 126 (18 Am. Rep. 164), determines this for this State, and refers to many decisions in other States to the same effect."

See *People* v. *Girdler*, 65 Mich. 68 (31 N. W. 624).

In *Williams* v. *Kilburn*, 88 Mich. 279 (50 N. W. 293), the wife, pending a suit for divorce, but before decree, married again. After the decree was obtained, the parties agreed that they should live and cohabit together as man and wife, and did so, though no marriage ceremony was again performed. The court said:

"The facts set forth show that, after plaintiff obtained her divorce, it was agreed that they should live and cohabit together as man and wife, which they continued to do for three years thereafter. The formal marriage ceremony may be treated as evidence, with what subsequently occurred, of the nature of the relation which they assumed

and occupied. These facts establish a valid marriage, and plaintiff's rights grow out of that relation. *Hutchins* v. *Kimmell*, 31 Mich. 126 (18 Am. Rep. 164); *Peet* v. *Peet*, 52 Mich. 464 (18 N. W. 220). Her remedy is that of a married woman against a deserting husband."

See, also, *People* v. *Loomis*, 106 Mich. 250 (64 N. W. 18); *People* v. *Seaman*, 107 Mich. 348 (65 N. W. 203, 61 Am. St. Rep. 326).

The testimony was conflicting, but we think there was sufficient of it to justify its submission to a jury.

It is claimed that the judge did not properly instruct the jury in relation to what was sufficient to constitute a valid marriage. He used the following language in his charge to the jury:

"This plaintiff comes before you, in court, claiming to be the lawful wife of the late Thomas Lorimer. On her is the burden of proof of showing that she is the lawful wife, there being no marriage certificate and no marriage ceremony. On her is the burden of showing that her mind and the mind of Thomas Lorimer once met,—met at the time that she said that they agreed to take each other for husband and wife, and to live in relations as such; that they made a bargain about it. And, in stating that, I say, if they did in their minds fully meet,—if they did come to a full understanding,—and you should find that, then, under the law of this State, they were married. That is the whole test of the matter."

We think this charge was too restricted, and that it was not cured by any other portion of the charge. Our courts have gone a good way to sustain the validity of a marriage where an agreement to live and cohabit together as husband and wife has been made and acted upon. But at no time has it been said that, in the absence of a valid marriage ceremony, a simple agreement to live together, even though the parties intended to carry out the agreement, is sufficient to constitute a valid marriage, unless acted upon by living together and cohabiting as husband and wife.

The plaintiff was allowed to testify in relation to matters that were equally within the knowledge of Mr. Lorimer,

and it is said that this is contrary to the provisions of section 10212, 3 Comp. Laws 1897. Counsel for plaintiff say:

"This section of the statute has been repeatedly construed by this court, and it has uniformly been held that the testimony of the parties to the litigation is competent in suits of this nature, where the estate itself cannot be depleted or increased by the result of the litigation, and where the claim made is not one against the estate, but is a controversy between the heirs themselves. The judgment in this case does not affect the estate proper, but simply determines who are the heirs of Thomas Lorimer, deceased. There was no error committed in the admission of the testimony of the plaintiff. *Brown* v. *Bell*, 58 Mich. 58 (24 N. W. 824); *McClintock's Appeal*, 58 Mich. 155 (24 N. W. 549); *Lautenshlager* v. *Lautenshlager*, 80 Mich. 285 (45 N. W. 147); *Lake* v. *Nolan*, 81 Mich. 115 (45 N. W. 376); *McHugh* v. *Fitzgerald*, 103 Mich. 21 (61 N. W. 354); *City of Marquette* v. *Wilkinson*, 119 Mich. 413 (78 N. W. 474, 43 L. R. A. 840)."

We do not think that this claim can be sustained. The defendants are either the heirs at law of Thomas Lorimer, deceased, or are tenants under the administrator of his estate. The property in controversy belongs to the estate of Mr. Lorimer. The plaintiff claims the right to the possession of the property by virtue of her contract of marriage with Mr. Lorimer, about which he must have had as much knowledge as she possessed. If she had presented a claim for services as housekeeper for the time which she lived with him, there could be no question but that she would be incompetent to testify as to what the contract was. *Campau* v. *Van Dyke*, 15 Mich. 380; *Cook* v. *Stevenson*, 30 Mich. 242; *Van Wert* v. *Chidester*, 31 Mich. 207; *Schratz* v. *Schratz*, 35 Mich. 485; *Hart* v. *Carpenter*, 36 Mich. 402; *Harmon* v. *Dart*, 37 Mich. 53; *Howard* v. *Patrick*, 38 Mich. 795; *Eccard* v. *Brush*, 48 Mich. 3 (11 N. W. 756); *Foster* v. *Hill*, 55 Mich. 540 (22 N. W. 30); *Pendill* v. *Neuberger*, 67 Mich. 562 (35 N. W. 249); *Taylor* v. *Bunker*, 68 Mich. 258 (36 N. W. 66); *Buffum* v. *Porter*, 70 Mich. 623 (38 N. W. 600);

*Barker* v. *Hebbard*, 81 Mich. 267 (45 N. W. 964); *Penny* v. *Croul*, 87 Mich. 18 (49 N. W. 311, 13 L. R. A. 83). In this case, instead of seeking to enforce a claim for services because of a contract of hire, she seeks to obtain one-half of the estate of the deceased, basing her right to do so upon a contract of marriage, which must have been equally within the knowledge of the deceased. The case comes within the express provisions of the statute. See *Mundy* v. *Foster*, 31 Mich. 313; *Chambers* v. *Hill*, 34 Mich. 523; *Bachelder* v. *Brown*, 47 Mich. 366 (11 N. W. 200); *Youngs* v. *Cunningham*, 57 Mich. 153 (23 N. W. 626); *Schuffert* v. *Grote*, 88 Mich. 650 (50 N. W. 657, 26 Am. St. Rep. 316); *In re Lambie's Estate*, 97 Mich. 49 (56 N. W. 223).

Before his death, Mr. Lorimer consulted professionally with Mr. Radford, an attorney, in relation to making provision for the plaintiff, and advised with him as to what he had best do to accomplish that purpose, and made statements to him with reference to his relations with the plaintiff. Mr. Radford gave him advice, which was not acted upon. Mr. Radford was sworn as a witness on the part of the plaintiff. His testimony was objected to for the reason that it was a privileged communication between attorney and client. The objection was overruled. In the case of *Chirac* v. *Reinicker*, 11 Wheat. 294, Mr. Justice Story stated:

" The general rule is not disputed that confidential communications between client and attorney are not to be revealed at any time. The privilege, indeed, is not that of the attorney, but of the client, and it is indispensable for the purposes of private justice. Whatever facts, therefore, are communicated by a client to counsel, solely on account of that relation, such counsel are not at liberty, even if they wish, to disclose, and the law holds their testimony incompetent."

See *Hamilton* v. *People*, 29 Mich. 173; *Passmore* v. *Passmore*, 50 Mich. 626 (16 N. W. 170, 45 Am. Rep. 62); *People* v. *Hillhouse*, 80 Mich. 584 (45 N. W. 484); *Riley*

v. *Conner*, 79 Mich. 504 (44 N. W. 1040); *Erickson* v. *Railway Co.*, 93 Mich. 418 (53 N. W. 393). See, also, 1 Wait, Act. & Def. 468, and cases cited; *Jenkinson* v. *State*, 5 Blackf. 465.

Counsel cite, in support of the admission of this testimony, *Greenough* v. *Gaskell*, 4 Term R. 753.[1] We do not find the case cited, but the case of *Wilson* v. *Rastall*, 4 Term R. 753, so far as it is applicable to the case at all, is against the admission of the testimony. The case of *Russell* v. *Jackson*, 9 Hare, 387, is also cited. This case holds that a privilege given for the protection of the client cannot have the effect of excluding evidence of a trust which he had intended to create, and thus defeat a claim by the parties who accepted the trust to hold the trust property beneficially; but the court also held as follows:

"In cases where the rights and interests of the client, or of those claiming under him, come in conflict with the rights and interests of third persons, there can be no difficulty in applying the rule. If it was not applied in such cases, the client could never with safety state to his solicitor the true position of his case. He would be driven to speculate as to what it would be for his interest to divulge."

The case of *Blackburn* v. *Crawfords*, 3 Wall. 175, is also cited. In that case the attorney had drawn a will for his client, making certain persons legatees in the will. The testimony related to what his client said about the persons who were made the objects of his bounty by the terms of the will. The court was of the opinion (following in that respect *Russell* v. *Jackson*, *supra*) that, in the case of a testamentary disposition, the foundation on which the rule of privilege proceeds is wanting, and that it cannot be for the interest of the client to exclude any testimony in support of what he solemnly proclaimed and put on record by his will. The case here is very different. No will was ever made by Mr. Lorimer. The evidence received was not in support of a testamen-

---

[1] 1 Mylne & K. 98.

tary disposition of his property. The knowledge possessed by Mr. Radford was obtained in his professional capacity. The case is directly within the rule, and not among the exceptions to the rule.

Two witnesses on the part of the plaintiff gave testimony who had also given testimony in some other proceeding. While they were upon the stand, without any apparent necessity for so doing, they were handed copies of the testimony given by them, which they were told to read, and after doing so the counsel for the plaintiff directed their attention to the subject-matter covered by the copies of the testimony which had been handed them. This is said to be error. As the case is to be reversed for other reasons, we will not decide whether this was reversible error or not, but will content ourselves with saying that the practice is not to be commended.

It is urged by counsel for defendants that several pieces of property were mentioned in the declaration, the possession of some pieces being in some persons, and other pieces in other persons, and that because of this the action cannot be maintained. The record discloses, it is claimed on the part of the defendants, that all the property which is involved in this litigation belongs to the estate of Mr. Lorimer. It is claimed that, before the suit was begun, Mr. Conely, an attorney representing the estate, agreed with the attorney for the plaintiff, by writing him a letter to that effect, that, if the ejectment suit was commenced, the question of possession would not be used as a defense in the trial. If this agreement was made and was duly authorized, we do not think the question can now be raised.

Judgment is reversed, and new trial ordered.

MONTGOMERY, C. J., HOOKER and LONG, JJ., concurred with MOORE, J.

GRANT, J. I do not think the facts in this case justify the conclusion that there was a common-law marriage between the plaintiff and Thomas Lorimer. Their inter-

course was purely one of sexual commerce. She was a common prostitute, and kept a house of prostitution, and he was a libertine. It is not claimed that when this intercourse began there was any understanding or thought of entering into the marriage relation. It may be true that afterwards he sometimes spoke of her as his wife. If he did, this was evidently prompted by a desire to cover up their shameful and illicit relation. Their deliberate acts, about which there is no dispute, during their entire intercourse, directly contradict any marriage relation. She went by her maiden name, gave her name as such to be inserted in the city directory, and received and executed papers by her maiden name, while he, a real-estate dealer, made all his conveyances as an unmarried man. Under these circumstances, I think it makes no difference what representations they made to others to cover up their actual relation. In *Clancy* v. *Clancy*, 66 Mich. 202 (33 N. W. 889), the parties signed an agreement "to live as man and wife, but each party retains the right to buy, sell, and transfer their respective properties without question of the other party;" and this court held that their relation was purely one of concubinage. In the present case there is no evidence of an agreement to be man and wife, and the solemn acts of the parties, in my judgment, show that no such relation existed. In other respects I concur in the opinion of my Brother MOORE.