PEOPLE v. DAHROOGE.

1. PERJURY—EVIDENCE.

Evidence tending to show that respondent in a civil suit denied receiving or depositing certain money in the bank, that he in fact made such deposit and that a deposit slip produced by him was falsified, *held*, to sustain a conviction of perjury.

2. CRIMINAL LAW—TRIAL—MISCONDUCT OF PROSECUTING ATTORNEY —EVIDENCE—PRIVILEGED COMMUNICATIONS.

Where the prosecuting attorney called to the stand the attorney for respondent in a civil suit, wherein it was claimed respondent had testified falsely, and asked him questions as to communications made to him by his former client, who was thereby compelled to claim that such communications were privileged and to object to the questions, the conduct of the prosecutor was prejudicial and required the reversal of the case.

Exceptions before sentence from the superior court of Grand Rapids; Stuart, J.  Submitted November 14, 1912. (Docket No. 133.)   Decided December 17, 1912.

George Dahrooge was convicted of perjury.   Reversed.

*Earl F. Phelps*, Prosecuting Attorney, and *Louis T. Herman*, Assistant Prosecuting Attorney, for the people.

*Powers & Eardley*, for respondent.

BROOKE, J.   Respondent, having been convicted of perjury, brings his case to this court for review upon exceptions before sentence.

Respondent was plaintiff and one Salamy was defendant in a suit tried in the justice's court of the city of Grand Rapids.  The suit was upon a draft for $200, which sum the plaintiff (respondent) claimed was due him from Salamy.  Salamy admitted the receipt of the money represented by the draft, but claimed that it did not

represent a real indebtedness from him to respondent for the following reasons: On February 4, 1910, respondent and Salamy went to the Kent State Bank, where respondent signed and Salamy indorsed a promissory note for $300. Respondent discounted this note at the bank and claims to have then and there paid the $300 over to Salamy. The note was afterwards paid by Salamy. At the trial Salamy claimed that respondent gave him but $100 of the $300 obtained upon the note, and that the draft for $200, upon which suit was brought, was given him on May 28, 1910, to balance that transaction. Salamy produced his bank book which showed a deposit of only $105 on that day, and testified that respondent had taken $200 of the $300 and in his presence had handed the money to his (respondent's) wife, together with $10 which he took from his pocket, and had instructed her to deposit the same in his own bank. He demanded the production of respondent's bank book, which he claimed would show such a deposit on February 4, 1910. The bank book, being produced, did show a deposit of that amount on that day. The next morning, being the second day of the trial, respondent produced and offered in evidence a paper which, he testified, was the original deposit slip accompanying his deposit of February 4, 1910. The slip was in the handwriting of respondent and was as follows:

Kent State Bank.<br>Deposited by George Dahrooge, Grand Rapids Mich.<br>February 4,.1910.

Please list each check separately.

| | |
|---|---:|
| Currency | $77 00 |
| Gold | 10 00 |
| Silver | 59 50 |
| Checks | 63 50 |
| Total | $210 00 |

The justice of the peace having secured an alleged true copy of the original slip from the bank, respondent was defeated in his civil suit against Salamy, and thereafter this prosecution was begun. The officials of the bank,

being called in this case, testified that no such deposit as is described in this slip was made by respondent on said date. They identified a copy of the original slip made for the justice by Arthur Weitz, teller of the bank, on the last day of the trial in the justice's court, a copy of which follows:

Kent State Bank.

Deposited by George Dahrooge, Grand Rapids, Mich.

February 4, 1910.

Please list each check separately.

Currency _____$210 00
Gold _____
Silver _____
Checks_____

The wife of respondent at this trial testified that she herself got the slip produced by respondent from the bank on the second day of the trial in the justice's court and handed it to Mr. Wesselius, her husband's attorney, in the courtroom. A careful reading of the entire record in this case leads to the conclusion that there was abundant evidence to warrant the verdict of the jury.

It is urged, however, on the part of respondent, that reversible error was committed. There are 28 assignments of error. We think they are all without merit except two —the fifth and the twenty-seventh. The fifth is based upon the following proceeding occurring during the trial:

"The people called Sybrant Wesselius in rebuttal, and he testified as follows:

"*Q.* You were attorney for Dahrooge, this respondent, in justice's court upon a trial August 29 and 30, 1910?

"*A.* Yes, sir. I was attorney in some case down there between Dahrooge and Salamy.

"*Q.* That was a case, was it not, in which a certain deposit in the sum of $210, as shown by Dahrooge's books, bearing date February 4, 1910, became involved?

"*A.* There was a deposit involved of $210; I think that was the date.

"*Q.* I want to ask you, Mr. Wesselius, when that deposit became involved there, did Dahrooge tell you where he got the money that constituted that deposit?

"*Mr. Powers:* I object to that as leading. In the next

place Mr. Wesselius could not testify to it, anyway, because he would be barred on account of the confidential relation.

"*The Court:* I suppose Mr. Wesselius would know in regard to whether it is a privileged communication or not.

"*The Court:* So far as that question is concerned, you may answer.

"*Mr. Powers:* An exception.

"*A.* He told me where he got part of it.

"*Q.* Did he tell you where they were when they went to put the money in the bank?

"*Mr. Powers:* I submit that is incompetent and improper because this is violating this relationship between attorney and client.     Mr. Wesselius was his attorney at that time.

"*The Court:* You may answer that.

"*Mr. Powers:* An exception.

"*Mr. Brown:* I will waive that.     *     *     *

"*Q.* You can answer that by "yes" or "no."

"*The Court:* You may answer.

"*A.* He told me who was at the bank.

"*Q.* At the bank?

"*A.* Yes, sir.

"*Q.* The bank the deposit was made in or the other bank?

"*A.* The bank the deposit was made in.

"*Q.* That the $210 was made in?

"*A.* Yes, sir.

"*Q.* Did he tell you what time of day it was?

"*Mr. Powers:* I object to that for the same reason. Mr. Brown assumes that he can get around this statute by asking a particular question on each part and have the whole story go in, which is again a violation of the statute.     An attorney cannot disclose what his client told him.

"*The Court:* Of course, I assume Mr. Wesselius, being an attorney, will claim his privilege where he feels that it is involved.     Every talk between a lawyer and client is not a privileged communication.

"*Mr. Powers:* The one who has the privilege and who can waive this point is the client and not the attorney.

"*The Court:* No, the attorney can do that sometimes.

"*Mr. Powers:* I understand it is the client.

"*Mr. Brown:* I will ask some of these questions and see whether counsel objects to them.

"*Q.* Did he tell you what the character of the money was which constituted that deposit slip of $210, whether it was currency or mixed money, coin or currency?

"*Mr. Powers:* At the time this conversation took place, I understand you were Mr. Dahrooge's attorney representing him.

"*A.* In justice's court.

"*Mr. Powers:* I object to it because an attorney cannot disclose a communication made to him by his client.

"*Mr. Brown:* I won't urge that now.

"*A.* He told me it was money and—

"*Mr. Powers* (interrupting): I understand that question has been waived.

"*Mr. Brown:* Why he objects to the question, I understand, is that Mr. Dahrooge, on account of your being his attorney, objects to your telling here what he said. Is that right, Mr. Powers?

"*Mr. Powers:* If it please the court, we take exception to this method of examination. The prosecuting attorney knows those questions cannot be answered. He asks those questions and makes us except to them to prejudice him in the eyes of the jury. I say this is an improper examination by the prosecuting attorney, and I ask the court not to permit this method of conducting the examination.

"*Mr. Brown:* You may take the witness."

Of this assignment of error, counsel for the people say:

"Mr. Brown (the prosecutor) could not tell until after asking the questions whether or not any privileged communication would be waived. We submit the court fairly and fully guarded the rights of respondent."

This court has frequently held that confidential communications between attorney and client are not to be revealed at any time. *Erickson* v. *Railway Co.*, 93 Mich. 414 (53 N. W. 393); *Mack* v. *Sharp,* 138 Mich. 448 (101 N. W. 631, 5 Am. & Eng. Ann. Cas. 109); *Lorimer* v. *Lorimer,* 124 Mich. 631 (83 N. W. 609). See, also, cases cited in *Lorimer* v. *Lorimer, supra;* 40 Cyc. p. 2361, and cases cited in note 81. It may, perhaps, be said that in the case at bar the attorney did not testify to any fact which could have prejudiced the respondent. This, how-

ever, we do not think is the proper test to be applied to such testimony. In offering the attorney as a witness and interrogating him as he did, the prosecutor clearly intimated to the jury that, if the attorney was permitted to testify, his evidence would not sustain the statements made by respondent when upon the stand in his own behalf. The mere fact that respondent was compelled to interpose an objection upon the ground of privilege tended to prejudice him in the eyes of the jury. A reading of the foregoing excerpt rather indicates that the prosecutor was fully aware of this fact and deliberately sought such advantage as would naturally flow from the interposition of the objection. If such was the case, it was highly reprehensible. *Kerr* v. *Manufacturing Co.*, 155 Mich. 191 (118 N. W. 925). The charge is barren of any allusion to the subject, and the remarks of the court during the colloquy certainly had no tendency to correct the error.

The twenty-seventh assignment of error is based upon the refusal to grant a new trial. A new trial should have been granted upon the ground urged in the fifth assignment already discussed.

For the error pointed out, the conviction is reversed, and a new trial ordered.

MOORE, C. J., and STEERE, McALVAY, STONE, OSTRANDER, and BIRD, JJ., concurred. KUHN, J., did not sit.