PEOPLE v PAASCHE

Docket No. 147721. Submitted April 20, 1994, at Detroit. Decided
     December 5, 1994, at 9:25 A.M.

     Joanne G. Paasche and her husband were convicted by a jury
     following a joint trial in the St. Clair Circuit Court, Ernest F.
     Oppliger, J., of failing to file a Michigan income tax return for
     1988 with intent to evade taxes. Joanne Paasche, hereafter
     referred to as the defendant, appealed.

         The Court of Appeals *held:*

         1. Error requiring reversal resulted when the trial court
     limited the defendants' peremptory challenges of jurors to five
     challenges for both defendants. MCL 768.12; MSA 28.1035 and
     MCR 6.412(E)(1) provide that each defendant tried for an
     offense not punishable by death or life imprisonment, such as
     in this case, is entitled to five peremptory challenges. The issue
     concerning the number of peremptory challenges was not
     waived by the defendant by virtue of the fact that only four
     challenges were used and no objection concerning the number
     of challenges was placed on the record. Because commonly
     followed trial strategy calls for using all but one peremptory
     challenge, it can be concluded that the defendants were preju-
     diced when they were not allowed the proper number of pe-
     remptory challenges. Furthermore, both the defendant and the
     prosecution agree that an objection was made in chambers
     before jury selection.

         2. There was insufficient support in the record for the trial
     court's ruling that the crime-fraud exception to the attorney-
     client privilege and the accountant-client privilege was applica-
     ble so as to allow the admission of evidence of certain records
     seized pursuant to a search warrant executed at the offices of

REFERENCES

Am Jur 2d, Accountants §§ 15, 16; Jury §§ 235, 236; Trial §§ 192,
     500; Witnesses §§ 395, 399.
Jury: number of peremptory challenges allowed in criminal case,
     where there are two or more defendants tried together. 21 ALR3d
     725.
Privileged communications between accountant and client. 33
     ALR4th 539.

an accountant retained by the defendants' attorney on behalf of the defendants. The attorney-client privilege or the accountant-client privilege applies to communications that relate to past wrongdoing by the client, but not to future crime or fraud. In this case, it is not clear whether the trial court recognized the distinction between communications relating to past wrongdoing and those relating to future wrongdoing in making its ruling regarding the crime-fraud exception to the attorney-client privilege and the accountant-client privilege.

3. The defendant was denied her right to a fair trial when the prosecution was allowed to ask the defendants' attorney and accountant, as witnesses at trial, questions for which both had to assert testimonial privileges in front of the jury. Prejudice to the defendant resulted because of adverse inferences the jury could have drawn from the attorney's and the accountant's refusal to answer based on privilege.

4. The jury instructions given by the trial court, when reviewed in their entirety, fairly presented the issues to be tried and sufficiently protected the defendant's rights.

5. Sufficient evidence existed to support the defendant's conviction. Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have concluded that the defendant had committed the charged offense.

Reversed and remanded for new trial.

1. JURY — PEREMPTORY CHALLENGES — CRIMES NOT PUNISHABLE BY DEATH OR LIFE IMPRISONMENT.

Every defendant put on trial for a crime that is not punishable by death or life imprisonment, whether tried solely or jointly, is entitled to five peremptory challenges of jurors; error requiring reversal occurs where a trial court limits two such defendants tried jointly to a total of five challenges for both, and prejudice will be presumed to have resulted even if one of those challenges is left unused (MCL 768.12; MSA 28.1035; MCR 6.412[E] [1]).

2. WITNESSES — ATTORNEY-CLIENT PRIVILEGE — ACCOUNTANT-CLIENT PRIVILEGE — CRIME-FRAUD EXCEPTION.

The attorney-client privilege and the accountant-client privilege do not apply to communications relating to future crime or fraud by the client; the crime-fraud exception to the privileges applies where it can be shown that there is a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud and that the communications were in furtherance thereof (MCL 339.713; MSA 18.425[713]).

3. CRIMINAL LAW — TRIAL — FAIR TRIAL — ATTORNEY-CLIENT PRIVI-
    LEGE — ACCOUNTANT-CLIENT PRIVILEGE.
    A criminal defendant is denied the right to a fair trial where the
    prosecution is allowed to ask an attorney-witness a question
    that the prosecution knows the attorney will refuse to answer
    on the basis of the attorney-client privilege; the rule also
    applies where an accountant retained to assist in defending
    against a criminal tax fraud investigation is named as a wit-
    ness and the prosecution is allowed to ask the accountant a
    question that the prosecution knows the accountant will refuse
    to answer on the basis of the accountant-client privilege.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *E. David Brockman* and *Paul L. Bricker,* Assistant Attorneys General, for the people.

*John A. Lydick,* for the defendant.

Before: NEFF, P.J., and WHITE and M. L. STA-CEY,* JJ.

NEFF, P.J. Defendant appeals as of right her conviction of failing to file a Michigan income tax return for 1988 with intent to evade taxes. MCL 205.27(1)(a); MSA 7.657(27)(1)(a). We reverse.

I

Defendant and her husband, William Paasche, were allegedly in the business of subdividing land. Although they earned substantial income from 1985 to 1988, they failed to file Michigan tax returns for those years. They also failed to file federal tax returns, and as a result, the Internal Revenue Service began an investigation. In response to the federal investigation, the Paasches hired attorney Richard Daguanno, who in turn hired certified public accountant Barry Allen, who

---

* Circuit judge, sitting on the Court of Appeals by assignment.

had performed tax accounting services for the Paasches before being hired by Daguanno.

In May 1990, agents of the Michigan Department of Treasury executed a search warrant at the Paasches' residence. During the course of this search, William Paasche indicated to the agents that he kept some of his files at Allen's office. Accordingly, a search warrant was obtained for Allen's office, and additional files were seized.

Following a joint trial, both Paasches were convicted of tax evasion for the tax year 1988.[1]

II

At trial, defendants were limited to a total of five peremptory challenges. Defendants claimed that each was entitled to five challenges. We agree.

A

Both MCL 768.12; MSA 28.1035 and MCR 6.412(E)(1) provide that each defendant tried for an offense not punishable by death or life imprisonment is entitled to five peremptory challenges. There is no question that defendants statutorily were entitled to five peremptory challenges each, and that this statutory right was violated when they were allowed only five challenges for both of them.

The prosecution argues that this error does not require reversal because defendant failed to show prejudice, and because defendant waived this issue by using only four of the five peremptory challenges. We disagree.

---

[1] William's conviction was peremptorily reversed, however, as a result of his untimely death during the pendency of his appeal. *People v Paasche,* unpublished order of the Court of Appeals, decided June 24, 1993 (Docket No. 148637).

B

In *People v Miller,* 411 Mich 321, 326; 307 NW2d 335 (1981), our Supreme Court noted:

> [G]iven the fundamental nature of the right to trial by an impartial jury, and the inherent difficulty of evaluating such claims, a requirement that a defendant demonstrate prejudice would impose an often impossible burden. A defendant is entitled to have the jury selected as provided by the rule. [Citations omitted.]

In *People v Juarez,* 158 Mich App 66, 71-72; 404 NW2d 222 (1987), this Court noted that although there is no constitutional right to peremptory challenges, the failure to "honor the statutory right of peremptory challenge is error requiring reversal and of serious import."

Accordingly, because the trial court failed to follow the proper procedure and allow defendant five peremptory challenges, we conclude that the trial court's error requires reversal, even if defendant failed to prove prejudice. See also *Leslie v Allen-Bradley Co, Inc,* 203 Mich App 490, 493-494; 513 NW2d 179 (1994).

C

We next address whether this issue was waived because only four of the allotted five peremptory challenges were used.

Defendants were represented by separate counsel below and did not share a total identity of interests with respect to their defenses. Three of the peremptory challenges were exercised by counsel for Mr. Paasche. The fourth was exercised by Mr. Paasche's attorney also, but after consulting with Mrs. Paasche's attorney and by saying "we

thank and excuse [juror's name]." Because the two defendants were limited to a total of five challenges and we are not privy to any decision they might have reached concerning how they would share or divide them, we simply have no way of knowing whether defendant exercised any, some, or all of the four challenges that were used. Thus, it would be mere speculation to conclude that defendant waived this issue by failing to use all of her peremptory challenges.

Even if we could conclude that defendant exercised the four peremptory challenges, we still would not find waiver of this issue. In *People v Russell*, 182 Mich App 314; 451 NW2d 625 (1990) (Sawyer, J. dissenting), rev'd 434 Mich 922 (1990) (for the reasons stated in the dissent of Sawyer, J.), Judge Sawyer concluded that a defendant who used only thirteen of a possible twenty peremptory challenges waived the defective jury selection procedure. However, Judge Sawyer held that if the defendant had used all but one of the challenges, a different result might follow, noting that commonly accepted trial tactics call for using all but one peremptory challenge. *Id.* at 325, n 5.

We also recognize this commonly followed trial strategy, and conclude that if defendant's trial counsel used all but one of her peremptory challenges, that fact would operate to preclude waiver of this issue on appeal.

D

Finally, it is not fatal to defendant's appeal that no record of defense counsel's objections to the limited number of peremptory challenges exists. Both parties agree that defense counsel objected to the number of peremptory challenges in chambers before jury selection began. This factual backdrop

allows us to conclude that defendant is not using this issue as an appellate parachute.

The trial court's error requires reversal. Because our decision may result in retrial, we will discuss the issues that may arise during a new trial.

### III

Defendant challenges the searches of her home and of her accountant's office on a number of grounds. Only one merits review.

Defendant argues that all evidence obtained from the search of accountant Allen's office should have been suppressed. According to defendant, the search and seizure violated the attorney-client and accountant-client privileges because the crime-fraud exception to those privileges, relied on by the trial court to admit the evidence, does not apply. We conclude that the record is insufficient to sustain either defendant's or the prosecution's position.[2]

### A

First, we note that the attorney-client privilege arises with regard to the search of Allen's office because, when executing the search warrant for that office, treasury agents seized attorney files as well as Allen's files. Although the agents eventually returned all but one of the files, a file dealing exclusively with the Paasches' tax returns, we find that the other files were also seized. Further, Allen

---

[2] We are somewhat uncomfortable with the execution of the search warrant on Allen's office. See *People v Nash,* 418 Mich 196, 217-218; 341 NW2d 439 (1983). We find little distinction in this case between searching the accountant's office and searching an attorney's office. See discussion of this issue immediately *infra.* We note, however, that the prosecution did not "rummag[e] through the files and papers of a nonsuspect lawyer's office," *id.* at 217, but instead had the files brought to a conference room. Ultimately, we agree with the Court in *Nash* that resolution of this issue is best left to the Legislature. *Id.* at 218.

had been retained under a *Kovel*[3] agreement, so that all communications by the Paasches to their accountant, made after that retention, fall within the attorney-client privilege as well. See *Lindsay v Lipson,* 367 Mich 1, 5-8; 116 NW2d 60 (1962); *In re Petition of Delaware,* 91 Mich App 399, 406-407; 283 NW2d 754 (1979).

B

The crime-fraud exception to the attorney-client privilege is predicated on the recognition that where the attorney-client relationship advances the criminal enterprise or fraud, the reasons supporting the privilege fail. As the Supreme Court in *United States v Zolin,* 491 US 554, 562-563; 109 S Ct 2619; 105 L Ed 2d 469 (1989), stated:

> "[S]ince the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose." The attorney-client privilege must necessarily protect the confidences of wrongdoers, but the reasons for the protection—the centrality of open client and attorney communication to the proper functioning of our adversary system of justice— "ceas[es] to operate at a certain point, namely, where the desired advice refers *not to prior wrongdoing, but to future wrongdoing*." [Citations omitted. Emphasis in original.]

We agree with the Supreme Court's reasoning and determine that where advice from an attorney refers to future, not past, wrongdoing, the crime-fraud exception applies to the otherwise privileged communication.

C

We do not limit our review, however, to the

---

[3] *United States v Kovel,* 296 F2d 918 (CA 2, 1961).

attorney-client privilege. The file admitted at trial was prepared by Allen and could have contained information acquired by him before he was retained by attorney Daguanno on behalf of the Paasches. In that instance, the attorney-client privilege would not apply. *Kovel, supra.* However, the accountant-client privilege might apply.

The purpose behind the accountant-client privilege, MCL 339.713; MSA 18.425(713), is to protect from disclosure the substance of the information conveyed by the client to the accountant. *People v Safiedine,* 163 Mich App 25, 31; 414 NW2d 143 (1987). Although the purpose behind the accountant-client privilege is not the same as the purpose behind the attorney-client privilege, the effect of the two privileges is the same: otherwise relevant information is withheld from the factfinder. Thus, as with the attorney-client privilege, the purpose behind the accountant-client privilege must cease to operate when the advice sought by the client refers to ongoing or future wrongdoing.

D

It is unclear here exactly how the trial court applied the crime-fraud exception at the suppression hearing. Although the issue was argued by trial counsel, the court failed to make a specific ruling with regard to that issue, and trial counsel did not ask for a ruling. The court, however, later ruled that the exception applied to Allen's and Daguanno's trial testimony because this case involved the perpetration of a fraud. To the extent the court used this reasoning for admitting the file in question, the court erred in failing to recognize the temporal element involved: namely, that the communication to the attorney or the accountant must relate to a crime or fraud that is either ongoing or to occur in the future.

In order for the crime-fraud exception to apply to the privileges,[4] the prosecution must show that there is a reasonable basis to (1) suspect the perpetration or attempted perpetration of a crime or fraud and (2) that the communications were in furtherance thereof. *In re John Doe, Inc,* 13 F3d 633, 637 (CA 2, 1994). This showing must be made without reference to the allegedly privileged material. MRE 104(a).

Here, the prosecution met the first prong. Its evidence suggested that the Paasches earned substantial amounts of income from 1985 through 1988, but had not paid taxes on that income, or otherwise notified the treasury department. We conclude that this evidence constitutes a reasonable basis to suspect the perpetration of the fraud of tax evasion.[5]

It is questionable, however, whether the prosecution established a reasonable basis to believe that the communications between the Paasches and Daguanno were in furtherance of the fraud. The Paasches were aware of the federal investigation and hired Daguanno in response to that investigation in January 1989. This suggests that communications between the Paasches and Daguanno related to past wrongdoings. On the other hand, the 1988 return was not due until April 1989. Further, in May 1990, when the search warrant was executed, the Paasches and their counsel still had not filed a 1988 return. Thus, it is possible that the prosecution could establish that advice relating to tax year 1988 was solicited by the Paasches in an

---

[4] We express no opinion concerning how the crime-fraud exception applies to work-product material. The only seized file that is included in the lower court record did not contain material that could be considered work product.

[5] The elements of tax evasion are (1) failure to file a tax return and (2) intent to defraud or evade paying taxes to the state. MCL 205.27(2); MSA 7.657(27)(2).

attempt to evade paying their 1988 Michigan taxes.[6]

It is also unclear whether the prosecution established the reasonable basis with respect to Allen. While Allen did have more of an ongoing, nondefense-oriented relationship with the Paasches than did Daguanno, once Allen was retained by Daguanno, subsequent communication between himself and the Paasches would seem to be related to past wrongdoings. However, the timing of the retention and the failure to file a 1988 return again cast doubt on that proposition.

Accordingly, on retrial, the prosecution must establish that this second prong of the crime-fraud exception is met before the file seized from Allen's office may be admitted into evidence.

## IV

Defendant next argues that her right to a fair trial was denied when the prosecution asked her attorney and accountant questions for which both of them had to assert testimonial privileges in front of the jury, when the prosecution knew that the assertions of privilege would be made. We agree.

### A

Michigan courts have long recognized the danger involved in allowing a witness intimately connected with the criminal episode at issue to assert a testimonial privilege in front of a jury. In *People v Giacalone*, 399 Mich 642, 645; 250 NW2d 492

---

[6] We do not suggest wrongdoing on the part of the Paasches' attorney or accountant. The crime-fraud exception applies even where the attorney or the accountant is unaware that advice is sought in furtherance of the improper purpose. *In re Grand Jury Subpoena Duces Tecum*, 731 F2d 1032, 1038 (CA 2, 1984).

(1977), our Supreme Court held that "[a] lawyer may not knowingly offer inadmissable evidence or call a witness knowing that he will claim a valid privilege not to testify." The rationale for this rule is the adverse inference that may be drawn against the defendant by the jury from the claim of testimonial privilege. *Id.* at 646.

In *People v Poma,* 96 Mich App 726, 730; 294 NW2d 221 (1980), this Court stated:

> Both Federal and state courts have recognized the potential prejudice that results when a witness is placed on the stand and invokes the Fifth Amendment. When a witness who is substantially related to the criminal episode . . . asserts this privilege, critical weight is added to the prosecution's case. [Citations omitted.]

According to the Court in *Poma,* the validity of the asserted privilege is immaterial because the danger of the adverse inference is present regardless of the legitimacy of the assertion. *Id.* at 731.

The *Poma* opinion established a procedure to protect the defendant's rights when the trial court is confronted with a potential witness who plans to assert a testimonial privilege. First, a trial court must determine whether the witness understands the privilege and must provide an adequate explanation if the witness does not. *Id.* at 732. The court must then hold an evidentiary hearing outside the jury's presence to determine the validity of the witness' claim of privilege. *Id.* If the court determines the assertion of the privilege to be valid, the inquiry ends and the witness is excused.

If the assertion of the privilege is not legitimate in the opinion of the trial judge, the court must then consider methods to induce the witness to testify, such as contempt and other proceedings. *Id.* If the witness continues to assert the privilege,

the court must proceed to trial without the witness, because there is no other way to prevent prejudice to the defendant. *Id.*

### B

The prosecution argues that the above case law and reasoning do not apply to the assertion of testimonial privilege by an attorney or an accountant. The claim is that the jury would expect an attorney or an accountant to assert those privileges and thus no negative inference would be drawn. We disagree.

*People v Dahrooge,* 173 Mich 375; 139 NW 22 (1912), a case relied on by the Court in *Giacalone, supra,* is instructive on this point. In *Dahrooge,* the defendant was charged with perjury on the basis of his testimony during a civil trial in which he was the plaintiff and was represented by counsel. After the defendant testified on his own behalf at the criminal trial, the prosecutor called the attorney who represented the defendant in the civil case in rebuttal. The defendant objected to the attorney's testimony. The Supreme Court held:

> In offering the attorney as a witness and interrogating him as he did, the prosecutor clearly intimated to the jury that, if the attorney was permitted to testify, his evidence would not sustain the statements made by respondent when upon the stand in his own behalf. The mere fact that respondent was compelled to interpose an objection upon the ground of privilege tended to prejudice him in the eyes of the jury. [*Id.* at 380.]

### 1

We agree with the rationale in *Dahrooge.* Elicit-

ing an attorney's refusal to testify based on the attorney-client privilege is no less prejudicial than eliciting reliance on the Fifth Amendment by a codefendant or other witness intimately connected with the criminal enterprise at issue. In fact, the likelihood of prejudice where the attorney is called as a witness is arguably even greater.

Jurors are aware that clients hire and consult attorneys and undoubtedly assume that the clients place trust in the attorneys by truthfully and fully disclosing all the relevant facts. Indeed, an attorney cannot properly represent a client without full disclosure of the facts within the client's knowledge. If the attorney refuses to testify on the basis of privilege, surely the most logical conclusion is that the attorney knows the answer, but will not reveal it because it is damaging to the client's interest. To turn it around, it is reasonable to conclude that if an attorney-witness had information helpful to the client's cause, the attorney would be eager to share it with the jury. Viewed in this light, an attorney's refusal to answer based on privilege is akin to an admission in the eyes of a reasonable juror that the answer will not advance the client's case, and is, therefore, inherently prejudicial.

Here, Daguanno was hired by the Paasches in response to a federal investigation, so it is reasonable to assume that, as their attorney, he was intimately knowledgeable about their tax matters. Further, both the trial judge and the prosecution knew that Daguanno would invoke the attorney-client privilege because defense counsel raised the issue before trial. We conclude, therefore, that Daguanno's assertion of privilege in front of the jury denied defendant a fair trial.

2

Although we are not prepared to extend this

rule to all situations where an accountant asserts a testimonial privilege, we do apply it here. We hold that when an accountant is retained in order to assist in defending against a criminal tax fraud investigation, as Allen was here,[7] the rule applies for much the same reasons as when an attorney is involved. *Kovel, supra.*

Here, when examining Allen, the prosecutor elicited testimony from him regarding the fact that he had invoked the attorney-client privilege before trial, in response to the state investigation. This line of questioning left the jury free to infer that the privilege was asserted in order to hide damaging information from the investigators.

## C

We conclude that defendant's right to a fair trial was denied because the lower court failed to resolve this issue outside the jury's presence.[8] We note that defense counsel requested that issues of privilege be resolved outside the presence of the jury, but the trial court refused. Accordingly, if a new trial is held, the issues of the attorney's and the accountant's testimonial privileges must be dealt with outside the jury's presence and in the manner set forth above.

## V

Defendant next argues that the trial court erred

[7] Although Allen was retained by the Paasches before the federal investigation began, Allen asserted a testimonial privilege only in response to questions seeking information pertaining to the period after he was retained by Daguanno to assist in the Paasches' defense.

[8] Although the lower court ruled, outside the jury's presence, that the attorney's and the accountant's testimony was not protected by a privilege because of the crime-fraud exception, the court also stated that the exception might not apply depending on the testimony elicited at trial. Thus, the court ultimately made the determination whether the exception applied in the presence of the jury.

in failing to give a requested good-faith instruction to the jury. After a careful review of the record, we disagree. The jury instructions given by the court, when reviewed in their entirety, fairly presented the issues to be tried and sufficiently protected defendant's rights. *People v Davis,* 199 Mich App 502, 515; 503 NW2d 457 (1993).

We also conclude that the trial court did not commit error requiring reversal when it erroneously instructed the jury that defendant was charged with more than one crime. The court specifically explained, in other instructions, that defendant was charged with only one crime. On retrial, however, we caution the trial judge to not repeat this mistake.

VI

Last, we conclude that sufficient evidence existed to support defendant's conviction. To make this determination we must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. *People v Jaffray,* 445 Mich 287, 296; 519 NW2d 108 (1994).

On the basis of evidence that defendant failed to file income tax returns during four years when she and her husband earned substantial income, we conclude that a rational trier of fact could find both that the returns were not filed and that defendant possessed the requisite intent in failing to file. See n 5, *supra.*

Reversed and remanded for a new trial. We do not retain jurisdiction.