## Orix USA Corp. v. DVI Inc.

C.P. of Allegheny County, no. GD96-5919.

*Jack B. Cobetto,* for plaintiffs.
*Christine L. Donohue,* for defendants DVI Inc. and DVI Financial Services Inc.
*Douglas A. Campbell,* for defendants Mobile Imaging Inc., Mark A. DeSimone, Lee B. Youngquist.

WETTICK, *J.,* May 27, 1997—Defendant Mobile Imaging Inc. was the general partner of MRI Associates-3 Limited Partnership. Sheppard & Co. P.C., a certified public accounting firm, provided accounting services to Mobile. Plaintiffs seek to compel Sheppard to produce all documents relating to these accounting services. Mobile has raised the accountant-client privilege.

The Pennsylvania accountant-client privilege is a statutory privilege set forth in the Act of September 2, 1961, P.L. 1165, as amended, 63 P.S. §9.11a:

"Except by permission of the client, . . . a licensee or a person employed by a licensee shall not be required

to, and shall not voluntarily, disclose or divulge information of which he may have become possessed. . . . This provision on confidentiality shall prevent [The State Board of Accountancy] from receiving reports relative to and in connection with any professional services as a certified public accountant. . . . The information derived from or as the result of such professional services shall be deemed confidential and privileged. Nothing in this section shall be taken or construed as prohibiting the disclosure of information required to be disclosed by the standards of the profession in reporting on the examination of financial statements, or in making disclosures in a court of law or in disciplinary investigations or proceedings when the professional services of the certified public accountant . . . are at issue in an action, investigation or proceeding in which the certified public accountant . . . is a party."

At the argument on plaintiffs' motion to compel Sheppard to produce all records relating to Mobile, I ruled that Sheppard was required to produce any financial records which Mobile had provided to Sheppard that would be discoverable if in the possession of Mobile. The remaining dispute is over documents that involve communications between Mobile and Sheppard for the purposes of obtaining accounting services and advice.

In their complaint, plaintiffs allege that defendants committed a fraud against them by diverting MRI-3 Partnership funds. They contend that the Mobile accountant-client communications were in furtherance of the fraudulent diversion of the partnership funds; thus, documents relating to these accounting services are discoverable.

The issue raised through this discovery request is whether there is an exception to the accountant-client

privilege where the client has utilized the services of the accountant in the commission of a crime or a fraud.[1]

Defendants correctly state that 63 P.S. §9.11a does not contain a crime-fraud exception. On the other hand, it expressly contains other exceptions: "Nothing in this section shall be taken or construed as prohibiting the disclosure of information required to be disclosed by the standards of the profession in reporting on the examination of financial statements, or in making disclosures in a court of law or in disciplinary investigations or proceedings when the professional services of the certified public accountant . . . are at issue in an action, investigation or proceeding in which the certified public accountant . . . is a party." Defendants contend that the legislature intended for the privilege to apply to any information that is not expressly excluded.

If 63 P.S. §9.11a should be considered without taking into account any other evidentiary privileges, I might base a ruling solely on the language of this legislation. However, this legislation was enacted in the context of case law and legislation protecting confidential communications made for the purposes of obtaining professional services.[2] The legislature adopted this legislation creating an accountant-client privilege because

---

1. At this time, the parties are not addressing defendants' argument that even if there is a crime-fraud exception to the accountant-client privilege, plaintiffs have not made a sufficient showing that the accountant's services were used in the commission of a crime or a fraud.

2. The initial legislation enacted in 1961 created an accountant's privilege only for certified public accountants. In 1974, the legislature expanded the accountant privilege to professional corporations and professional associations. See Martin R. Bartel, Pennsylvania's Accountant-Client Privilege: An Asset With Liabilities, 30 Duq.L.Rev. 613, 617-18 (1992).

the common law did not protect communications between the accountant and the client.[3] This legislation "makes only a limited change in the common law." *Agra Enterprises Inc. v. Brunozzi,* 302 Pa. Super. 166, 171, 448 A.2d 579, 582 (1982). It was not intended to extend the full scope of the attorney-client privilege to accountant-client relationships. *Id.*

See *Rubin v. Katz,* 347 F. Supp. 322 (E.D. Pa. 1972), which was cited with approval in *Agra Enterprises Inc. v. Brunozzi, supra* at 171, 448 A.2d at 582, where the district court said:

"Defendants' attempt to draw an analogy to the broad, stringent protections of the attorney-client privilege as enforced in *Richardson v. Hamilton International Corp., supra,* and *John Doe v. A Corp.,* 330 F. Supp. 1352 (S.D.N.Y. 1971) cannot succeed. The Pennsylvania statute as described above was clearly intended to make a limited change in the law, and not to extend the common-law attorney-client privilege to accountant-client relationships. Defendants have not shown that the prophylactic rule established by common law in the attorney-client relationship has now been extended to the accountant-client case.[3]

---

"[3] Defendants argue for an exact application of the rules for attorney-client relationship to the accountant-client situation. While this would give an appealing symmetry to the law it would neglect the underlying reasons for the attorney-client privilege which are often not present in the accountant-client relationship." *Rubin v. Katz,* 347 F. Supp. at 324. (citation omitted)

---

3. Charles Alan Wright & Kenneth W. Graham Jr., 23 Federal Practice and Procedure §5427 (1980).

The accountant's privilege was discussed in Wright & Graham, 23 Federal Practice and Procedure §5427, *supra*:

"The arguments for recognition of an accountant's privilege parallel those advanced on behalf of other professional privileges. It is said that accountants are under an ethical obligation to preserve the confidences of their clients, that confidentiality is essential to the professional relationship, and that courts should honor the pledge of confidentiality because of the public importance of sound accounting practices. But there are substantial arguments in opposition to the privilege. The secrets imparted to accountants usually relate to business or financial affairs rather than the personal privacy of the client. In many cases the information concerns matters intended or required to be made public so the element of confidentiality is lacking." Also see, 1 McCormick on Evidence §76.2 (John William Strong ed., 4th ed. 1992):

"This privilege is most closely analogous to that for attorney-client, though the social objective to be furthered is arguably a distinguishable and lesser one."

Since the accountant-client privilege is characterized as most closely analogous to, while not as extensive as, the attorney-client privilege, the scope of the attorney-client privilege should be considered in determining the scope of the accountant-client privilege.

The attorney-client privilege for civil proceedings is codified at 42 Pa.C.S. §5928 which provides that:

"In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to or by his client, nor shall the client be compelled to disclose of the same, unless in either case this privilege is waived upon the trial by the client."

Although the language of this provision suggests that an attorney may never testify against a client without the client's consent, the case law holds that this legislation is simply a codification of the common-law attorney-client privilege. "This codification is merely a restatement of the common-law privilege and its attendant case law interpretations." *Commonwealth v. Maguigan*, 511 Pa. 112, 124, 511 A.2d 1327, 1333 (1986); *In re Investigating Grand Jury of Philadelphia County*, 527 Pa. 432, 439, 593 A.2d 402, 405 (1991).

The attorney-client relationship was the only professional relationship protected by an evidentiary privilege under the common law. *In re Adoption of Embick*, 351 Pa. Super. 491, 498, 506 A.2d 455, 459 (1986). This privilege for communications between an attorney and his or her client is the oldest testimonial privilege known to law. *Brennan v. Brennan*, 281 Pa. Super. 362, 370, 422 A.2d 510, 514 (1980). The purpose of the privilege is "to create an atmosphere that will encourage confidence and dialogue between attorney and client." *In re Investigating Grand Jury, supra* at 439-40, 593 A.2d at 406. The intended beneficiary of the privilege "is not the individual client so much as the systematic administration of justice which depends on frank and open client-attorney communication." *Id.* at 440, 593 A.2d at 406.

Although the attorney-client privilege is frequently viewed as the most important evidentiary privilege in the law because of the role of counsel in the administration of justice, the attorney-client privilege is not available to the client who uses legal services in furtherance of a criminal or fraudulent enterprise. "This is for the logically sufficient reason that no such enterprise falls within the just scope of the relation between legal adviser and client." 8 Wigmore on Evidence §2298 (John T. McNaughton ed., 1961).

Under Pennsylvania law, the attorney-client privilege has never protected communications between counsel and the client that were made for the purpose or in the course of the commission of proposed crime or fraud or that will aid and abet the client in criminal activities. *In re Investigating Grand Jury, supra* at 441, 593 A.2d 406-407; *Commonwealth v. Maguigan, supra* at 130, 511 A.2d at 1336-37; *Brennan v. Brennan, supra* at 372, 422 A.2d at 515. The crime-fraud exception to the attorney-client privilege applies when the client alone is guilty. *In re Investigating Grand Jury, supra* at 442, 593 A.2d at 407.

The purpose of the accountant-client privilege is very similar to that of the attorney-client privilege:

"The purpose of the accountant-client privilege is to insure an atmosphere wherein the client will transmit all relevant information to his accountant without fear of any future disclosure in subsequent litigation. Without an atmosphere of confidentiality the client might withhold facts he considers unfavorable to his situation thus rendering the accountant powerless to adequately perform the services he renders." Scott N. Stone & Marvin H. Lett, "The Accountant-Client Privileges," in Testimonial Privileges §3.04. (Scott N. Stone & Robert K. Taylor eds., 2d ed. 1995.)

The controlling issue is whether the legislature intended for the courts to consider the legislation protecting the accountant-client relationship to be a privilege defined by the words of the legislation or a privilege defined in the context of the case law governing other professional relationships, particularly the attorney-client privilege. Since the legislature, while codifying the attorney-client privilege, left it to the courts to develop the scope of this privilege, it is unlikely that the legislature intended for the scope of the accountant-client

privilege to be controlled by the language of a very general statute that does little more than recognize an evidentiary privilege.

The legislature either created an accountant-client privilege that protects communications in furtherance of the commission of a fraud or a criminal act or intended for this statutory privilege to be governed by the same legal principles that govern related privileges. The legislature would not have protected a client who uses accounting services in the commission of a fraud or a criminal act because there is no justification for an accountant-client privilege that extends to situations in which the client has used an accountant's services in this fashion.

In *Commonwealth v. Maguigan, supra,* the Pennsylvania Supreme Court rejected the argument that the attorney-client privilege set forth in 42 Pa.C.S. §5916 should be construed to protect from disclosure information regarding the whereabouts of a fugitive criminal defendant. Its opinion cited the rule of statutory construction that legislation should be construed to avoid an absurd result:

"Furthermore, to construe the confidential communications covered under 42 Pa.C.S. §5916 to entail information of this nature would lead to the absurd result where a fugitive can effectively use the attorney-client privilege to defy a lawful court order. We are bound under the rules of our Statutory Construction Act to avoid such absurd results and to promote public policy. 1 Pa.C.S. §1901." *Maguigan, supra* at 130, 511 A.2d at 1336-37.

In many instances, a client may look to either an accountant or an attorney for the same advice. Consider, for example, investment advice with tax implications or the preparation of tax returns. When the legislature

enacted legislation creating an accountant-client privilege, it was known that accountants perform many services that are also performed by attorneys and that the attorney-client privilege does not protect communications where an attorney's services are used in the commission of a fraud or a crime. The legislature would not have wanted a different result because the services were provided by an accountant.[4]

The Pennsylvania appellate courts have never considered whether a crime-fraud exception should apply to the legislation recognizing an accountant-client privilege. This issue has not arisen in most other jurisdictions that have adopted general legislation recognizing an accountant-client privilege. I am not aware of any cases which hold that the crime-fraud exception is inapplicable. In People v. Paasche, 525 N.W.2d 914 (Mich. Ct. App. 1995), the Michigan Court of Appeals held that the crime-fraud exception to the attorney-client privilege also applies to the accountant-client privilege.

"The purpose behind the accountant-client privilege is to protect from disclosure the substance of the information conveyed by the client to the accountant. Although the purpose behind the accountant-client privilege is not the same as the purpose behind the attorney-client privilege, the effect of the two privileges

---

4. "There is, however, one area in which even Wigmore was willing to urge the recognition of a privilege for accountants. Certified public accountants have long been permitted to engage in tax practice before agencies of the Treasury Department. Here they are in competition with attorneys, who can claim the attorney-client privilege. It can be argued that this places the accountant at an unwarranted disadvantage and permits lawyers, in effect, to sell the privilege instead of their services. Hence, it is concluded, accountants should also be granted a privilege." Wright & Graham, 23 Federal Practice and Procedure §5427, supra. (footnotes omitted)

is the same: otherwise relevant information is withheld from the fact-finder. Thus, as with the attorney-client privilege, the purpose behind the accountant-client privilege must cease to operate when the advice sought by the client refers to ongoing or future wrongdoing." *Id.* at 918. (citations omitted)

## ORDER

On May 27, 1997, upon consideration of plaintiffs' motion to compel, it is hereby ordered, adjudged, and decreed that: (1) there is a crime-fraud exception to 63 P.S. §9.11a that is identical to the crime-fraud exception to the attorney-client privilege, and (2) within 20 days, defendants shall produce any documents that come within this crime-fraud exception.