*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KIRSTIE RUSSO, JAMES MAIANI, and VICKI STILES,

Plaintiffs-Appellants,

v

HARRY TRIER, ANDREA GRABOWSKI, and ANTHONY FARHAT,

Defendants-Appellees.

UNPUBLISHED
December 13, 2024
8:42 AM

No. 367380
Roscommon Circuit Court
LC No. 2022-725981-CZ

Before: GADOLA, C.J., and K. F. KELLY and REDFORD, JJ.

PER CURIAM.

Plaintiffs appeal by right the trial court's order granting summary disposition in favor of defendants under MCR 2.116(C)(8) and (10), and denying plaintiffs' motion to compel. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises out of the claim by plaintiffs Kirstie Russo, James Maiani, and Vicki Stiles that defendants Harry Trier, Andrea Grabowski, and Anthony Farhat intentionally violated the Open Meetings Act ("OMA"), MCL 15.261 *et seq.*, when defendants voted to go into closed session during a special meeting of the Lake Township Board of Trustees ("Board") without a 2/3 majority. As of July 25, 2022, the day of the special meeting, defendants were each trustees on the Board, which also consisted of the township supervisor, Keith Stiles, and third-party David Russo. The meeting had been called by Keith Stiles to discuss settlement of a pending lawsuit. However, two days before the meeting, Keith informed the Board that he was resigning, effective immediately. The meeting minutes show that the Board discussed the supervisor's absence and resolved to meet at a future date to formally accept his resignation.

The vote in question occurred when Trier moved to enter a closed session to discuss a confidential written opinion from the township attorneys regarding a lawsuit filed against Lake Township captioned "*First Property Holdings v Lake Township*" ("Law Firm Letter"). Farhat seconded the motion, and it passed by a vote of 3 to 1, with David Russo voting no. The Board

-1-

then moved into closed session to discuss the Law Firm Letter and, upon reentering open session, resolved to "approve the Stipulated Consent Judgment . . . ."

Plaintiffs subsequently brought suit against defendants individually, alleging they intentionally violated the OMA by entering into closed session without the requisite 2/3 majority required by the statute. Plaintiffs also moved to compel the Law Firm Letter reviewed during the Board's closed session, asserting that it contained evidence that defendants knew of the requirements under the OMA to go into closed session but deliberately ignored them. Contemporaneously, defendants moved for summary disposition under MCR 2.116(C)(8) and (C)(10). Defendants argued that plaintiffs failed to state a claim because they failed to allege that defendants had the requisite state of mind when they voted to go into closed session. Defendants also argued that there was no evidence in the record to support the assertion that defendants knew about the 2/3 majority requirement but deliberately ignored it.

In a lengthy ruling from the bench, the trial court denied plaintiffs' motion to compel, concluding the Law Firm Letter was not relevant and was protected from disclosure under the attorney-client privilege. The court also granted defendants' motion for summary disposition, finding that plaintiffs failed to state a claim and failed to produce evidence that defendants intended to violate the OMA. This appeal followed.

## II. STANDARDS OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Encompass Healthcare, PLLC v Citizens Ins Co*, 344 Mich App 248, 254; 998 NW2d 751 (2022). Defendants moved for, and the trial court granted, summary disposition under MCR 2.116(C)(8) and (C)(10). "[M]otions under MCR 2.116(C)(8) test the legal sufficiency of a claim based on the factual allegations in the complaint." *Id*. (quotation marks and citation omitted; citation cleaned up). "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id*. (quotation marks and citation omitted). MCR 2.116(C)(10) states that summary disposition is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." "A motion brought under MCR 2.116(C)(10) tests the factual support for a party's action." *Encompass Healthcare*, 344 Mich App at 255 (quotation marks and citation omitted). Questions of statutory interpretation are also reviewed de novo. *Id*. at 254.

In addition, this Court reviews a trial court's decision on a motion to compel discovery for abuse of discretion. *In re Seybert Estate*, 340 Mich App 207, 210; 985 NW2d 874 (2022). "A trial court commits an abuse of its discretion when its decision falls outside the range of reasonable outcomes." *In re Gregory Hall Trust*, 346 Mich App 75, 81; 11 NW3d 552 (2023).

## III. ANALYSIS

## A. SUMMARY DISPOSITION

Plaintiffs first argue that the trial court erred when it granted summary disposition because it employed the incorrect legal standard when determining whether defendants intended to violate the OMA. We disagree.

"[T]he purpose of the OMA is to promote governmental accountability by facilitating public access to official decision making and to provide a means through which the general public may better understand issues and decisions of public concern." *Vermilya v Delta College Bd of Trustees*, 325 Mich App 416, 419; 925 NW2d 897 (2018) (quotation marks and citation omitted). "Absent an exception, a public body must ensure that '[a]ll deliberations . . . constituting a quorum of its members . . . take place at a meeting open to the public . . . .' " *Mr Sunshine v Delta College Bd of Trustees*, 343 Mich App 597, 603; 997 NW2d 755 (2022) (quoting MCL 15.263(3); alteration in original). "To further the OMA's legislative purposes, the Court of Appeals has historically interpreted the statute broadly, while strictly construing its exemptions and imposing on public bodies the burden of proving that an exemption exists." *Mr Sunshine*, 343 Mich App at 603 (quotation marks and citation omitted).

Public bodies may, however, go into closed session for certain limited purposes. MCL 15.268. Relevant to this appeal:

> (e) To consult with its attorney regarding trial or settlement strategy in connection with specific pending litigation, but only if an open meeting would have a detrimental financial effect on the litigating or settlement position of the public body.

> * * *

> (h) To consider material exempt from discussion or disclosure by state or federal statute. [MCL 15.268(1)(e), (h).]

"[M]aterial exempt from discussion or disclosure by state or federal statute," MCL 15.268(1)(h), includes "[i]nformation or records subject to the attorney-client privilege." MCL 15.243(1)(g). In order to properly call a closed session, "a 2/3 roll call vote of members elected or appointed and serving is required . . . ." MCL 15.267(1); see also *Mr Sunshine*, 343 Mich App at 608-609.

There are various statutory mechanisms to enforce the OMA. Concerning the public body itself, under MCL 15.271(1), "[i]f a public body is not complying with this act, the attorney general, prosecuting attorney of the county in which the public body serves, or a person may commence a civil action to compel compliance or to enjoin further noncompliance with this act." With respect to individual liability, "[a] public official who intentionally violates this act is guilty of a misdemeanor punishable by a fine of not more than $1,000.00," and "[a] public official who is convicted of intentionally violating a provision of this act for a second time within the same term shall be guilty of a misdemeanor and shall be fined not more than $2,000.00, or imprisoned for not more than 1 year, or both." MCL 15.272(1)-(2). Lastly, and relevant to this appeal, "[a] public official who intentionally violates this act shall be personally liable in a civil action for actual and exemplary damages of not more than $500.00 total, plus court costs and actual attorney fees to a person or group of persons bringing the action." MCL 15.273.

In *People v Whitney*, 228 Mich App 230, 252; 578 NW2d 329 (1998), this Court addressed the issue of whether, in a criminal case brought under the OMA, the trial court's jury instructions improperly "allowed the jury to find that defendants committed the crimes of intentionally violating the OMA and, by derivation, conspiracy to intentionally violate the OMA with a less

culpable mental state than was required for conviction." The trial court instructed the jury that intent "is established if the defendant was aware of a high probability that he was violating the Open Meetings Act," "[k]nowledge and intent may be inferred from circumstances that would convince a man of ordinary intelligence that he was violating the Open Meetings Act," and "if you find that a defendant acted in a reckless disregard of whether he was violating the Open Meetings Act and with a conscious purpose to avoid learning the truth, the requirements of intent and knowledge would be satisfied . . . ." *Id*. at 253-254.

This Court explained that "the crime of intentionally violating the OMA is a specific intent crime," which "requires a particular criminal intent beyond the act done, while a general intent crime requires merely the intent to perform a proscribed physical act." *Id*. at 254. To show whether a defendant intentionally violated the OMA, the Court set forth three elements: "(1) the defendant is a member of a public body, (2) the defendant actually violated the OMA in some fashion, and (3) the defendant intended to violate the OMA." *Id*. at 253 (footnote omitted). Concerning the third element, "as an essential element of the crime of intentionally violating the OMA, an offender must have a subjective desire to violate the OMA or knowledge that the offender is committing an act violative of the OMA." *Id*. at 255-256.

With respect to the jury instructions at issue, which "allowed a finding of the requisite intent element merely if a defendant was aware of a high probability that he was violating the OMA unless the defendant actually believed in good faith that he was not violating the OMA," the Court stated:

> This was a fundamental flaw that may have allowed conviction based in part on mere disregard of a highly probable risk of violating the OMA. The error could well have been reinforced by the district court's comment that a defendant cannot close his eyes to the obvious risk he is engaging in criminal conduct. This comment suggested that mere knowledge of a risk of violating the OMA would suffice to establish the requisite intent element. [*Id*. at 256 (quotation marks omitted; citation cleaned up)]

"Thus, under Michigan law, no lesser amount of recklessness or even deliberate ignorance suffices to replace the requisite specific intent that is essential to commit a specific intent crime." *Id*.

In *Zoran v Cottrellville Twp*, unpublished per curiam opinion of the Court of Appeals, issued August 25, 2015 (Docket No. 323225),[1] p 1-2, a case relied on by plaintiffs, the plaintiff was a trustee on the defendant's board of trustees who was denied his right to speak for up to three minutes by the township supervisor, who was also a defendant in the matter. The trial court granted the defendants' motion for summary disposition on the issue of the supervisor's individual liability, and this Court reversed, stating there was a genuine issue of material fact whether the supervisor knew she was violating the OMA. *Id*. at 4-5. Citing *Whitney*, the Court explained that there was evidence the supervisor "had a copy of the policy in front of her during the board meeting," and "kept track of the time that each person was allowed to speak at the meeting." *Id*.

---

[1] Unpublished decisions from this Court are not binding but may be considered for their persuasiveness. *Eddington v Torrez*, 311 Mich App 198, 203; 874 NW2d 394 (2015).

The Court noted that the speakers who were critical of the supervisor had their time cut short by one-third to one-half, and "they were cut off in the middle of criticizing Lisco, giving rise to an inference that they were cut off in response to harsh commentary they made about Lisco." *Id*. The Court concluded:

> Lisco initially permitted Adams to speak without providing an address, but demanded an address midway through Adams's allotted time, as Adams was criticizing Lisco, and cut Adams off despite Zoran protesting that an address was not a requirement. The manner in which she did so, and the timing thereof, suggests that she terminated Adams's time for reasons other than an evenhanded application of the guidelines. Ultimately, we conclude that the evidence raised a genuine question of fact whether Lisco knew she was violating the OMA when she prevented these speakers from using their full allotments of time. Consequently, the matter should be resolved by the trier of fact rather than being summarily dismissed. [*Id*. at 6.]

In the present case, in plaintiffs' complaint, the only allegation concerning defendants' intent to violate the OMA was the following assertion: "By expressly going into closed session without an insufficient [sic] number of votes and conducting non-public deliberations on July 25, 2022, Defendants each intentionally violated the Open Meetings Act." In other words, plaintiffs allegation concerning intent was simply that because defendants had insufficient votes to enter closed session but "expressly" did so anyway, defendants intended to violate the OMA. The trial court, for its part, found this allegation lacking, stating that "the complaint contains no facts supporting anything can amount to intent or that these particular defendants had a specific intent to violate the Open Meetings Act or some particularized subjective intent to violate the act." Stating that "on the facts alleged by the plaintiff, plaintiff [sic] has only alleged that a violation occurred," the court concluded plaintiffs failed to state a claim.

Plaintiffs failed to allege that defendants had a subjective desire to violate the OMA or knowledge that defendants were committing acts that violated the OMA. See *Whitney*, 228 Mich App at 255-256. To state a claim for an intentional violation of the OMA, the plaintiff must allege that: "(1) the defendant is a member of a public body, (2) the defendant actually violated the OMA in some fashion, and (3) the defendant intended to violate the OMA." See *id*. at 253 (footnote omitted). Plaintiffs' failure to allege that defendants intended to violate the OMA was fatal to their complaint, and the trial court did not err when it granted defendants' motion under MCR 2.116(C)(8).

All of the testimony in the case demonstrates that while defendants arguably violated the OMA when they voted to go into closed session on July 25, 2022, they did so without any intent to violate the act. Each defendant testified that they did not know they had violated the OMA when they voted 3 to 1 to enter closed session. According to Trier, he believed the Board "had to have a majority of the votes to go into closed session." Trier also stated that he did not believe he violated the OMA, in part, because he did not know all of its requirements and did not intend to violate the OMA when he voted to enter closed session. For his part, Farhat stated that he was aware the OMA "existed," but "maybe being naïve, maybe I didn't realize it was per se a law." Farhat stated that he did not intend to violate the OMA because he did not know that there was a

2/3 vote requirement to enter closed session, instead believing it was based on "majority vote." And Grabowski stated that she did not know of the requirement, "so it wouldn't be intentional."

Unlike the defendant in *Zoran*, who denied speaking time to those who were critical of her, there was no evidence in this case that defendants voted to go into closed session for a bad motive. The special meeting had originally been called by Stiles to discuss settlement of the lawsuit but, because he had suddenly and immediately resigned, the Board decided to proceed with the meeting. Assuming that Stiles was still "serving" for purposes of the OMA, see MCL 15.267(1), defendants did not achieve a 2/3 majority vote to go into closed session. But while Stiles may have still been "serving" for legal purposes, the record shows that defendants were confused regarding the impact Stiles's absence had. Thus, it appears that defendants went into closed session without a 2/3 majority vote for entirely benign reasons principally fueled by Stiles's resignation and absence.

Plaintiffs make much of the Law Firm Letter, which they believe shows that defendants had knowledge of the OMA's requirements. But aside from speculation made on the basis of *another letter* produced in *a different case* for *a different defendant*, plaintiffs have no evidence that the letter contains the language they believe it does. Moreover, even if plaintiffs obtained possession of the Law Firm Letter, there is also no evidence in the record that any defendant reviewed the Letter before entering into closed session. Indeed, both Farhat and Trier testified that they only reviewed portions of the Law Firm Letter once the Board entered closed session.

Plaintiffs insist that "actual knowledge" is not what is required under the OMA, and instead propose that the Court adopt an "intentional ignorance" methodology to determine intent. According to plaintiffs, defendants intentionally made themselves ignorant of the requirements of the OMA, such that knowledge of their violation should be imputed to them. However, this precise argument was addressed and rejected by the Court in *Whitney*. There, the Court noted that the district court's error was "reinforced" by its comment "that a defendant 'cannot close his eyes to the obvious risk he is engaging in criminal conduct.' " *Whitney*, 228 Mich App at 256. The comment "suggested that mere knowledge of a risk of violating the OMA would suffice to establish the requisite intent element," which this Court rejected. *Id*. According to the Court, "[p]erformance of the physical act proscribed in the statute is not enough to sustain a conviction"; rather, "[t]he act must be coincident with an intent to bring about the particular result the statute seeks to prohibit." *Id*. (quotation marks and citation omitted).

Without any evidence that defendants "subjectively desire[d] or kn[ew]" that they were violating the OMA, plaintiffs' complaint was subject to dismissal under MCR 2.116(C)(10), and the trial court did not err when it granted defendants' motion.

## B. MOTION TO COMPEL

Plaintiffs also argue the trial court abused its discretion when it denied their motion to compel the Law Firm Letter. We disagree.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." MRE 401. The "fact" that plaintiffs are trying to prove is that defendants knew of the OMA requirements

-6-

before entering into closed session, but either ignored them or deliberately violated them. The trial court concluded that the Law Firm Letter was not relevant because its contents were based on plaintiffs' speculation and, even if the contents were as plaintiffs surmised, there was no testimony that any defendant saw the Law Firm Letter before the vote to enter closed session. If plaintiffs had established that the Law Firm Letter contains language that relates to the OMA and had evidence that defendants reviewed the Letter before voting, the Letter would make it more probable that defendants knew of the 2/3 requirement. But, as stated, plaintiffs did not establish what was in the letter, and defendants testified that they did not review the Law Firm Letter until after they entered closed session. Accordingly, the trial court did not abuse its discretion when it denied plaintiffs' motion on the basis that the Law Firm Letter was not relevant.

In addition, the trial court did not abuse its discretion on the basis that the Law Firm Letter was privileged. Plaintiffs assert many arguments as to why the Law Firm Letter is either not privileged or is exempt from the privilege, none of which are convincing. "The attorney-client privilege is designed to permit a client to confide in his attorney, knowing that his communications are safe from disclosure." *McCartney v Attorney General*, 231 Mich App 722, 730; 587 NW2d 824 (1998). "The rationale behind the privilege is that if the client knows that damaging information could more readily be obtained from the attorney following disclosure than from himself in the absence of disclosure, the client would be reluctant to confide in his lawyer and it would be difficult to obtain fully informed legal advice." *Id*. at 731 (quotation marks and citation omitted).

In the letter produced by plaintiffs from an unrelated matter, defendants' law firm wrote to its client:

> We recommend that the Board discusses this legal opinion in closed session pursuant to MCL 15.268(l)(h). The Board can enter into closed session by making a motion to enter a closed session pursuant to MCL 15.268(1)(h) to discuss a confidential written legal opinion regarding the Board's role in the operation and maintenance of the established Lake Levels and conflicts of interest. A motion to go into closed session must be approved by roll call vote of 2/3 of the members of the Board (at least four members), regardless of whether any member is absent from the meeting.

Assuming the same language appeared in the Law Firm Letter, such advice from defendants' lawyers is undoubtedly privileged. The advice concerns the proper manner by which the public body can enter into closed session. Advice as to how clients can protect themselves from legal liability is at the core of the attorney-client privilege. See *Leibel v Gen Motors Corp*, 250 Mich App 229, 239; 646 NW2d 179 (2002) ("Opinions, conclusions, and recommendations based on facts are protected by the attorney-client privilege when the facts are confidentially disclosed to an attorney for the purpose of legal advice.") While plaintiffs are correct that the existence of the OMA is a fact, an attorney's opinions and conclusions regarding the OMA are not facts and are exempt from disclosure under the attorney-client privilege. See *id*.

Likewise, the fact that the Law Firm Letter was purportedly drafted to address pending litigation, and not OMA compliance, is of little moment to whether the Law Firm Letter is

privileged and not subject to disclosure. Under the OMA, the Board was entitled to go into closed session

> (e) To consult with its attorney regarding trial or settlement strategy in connection with specific pending litigation, but only if an open meeting would have a detrimental financial effect on the litigating or settlement position of the public body.

> * * *

> (h) To consider material exempt from discussion or disclosure by state or federal statute. [MCL 15.268(1)(e), (h).]

While the Board would not specifically be entitled to discuss the OMA portion of the Law Firm Letter under MCL 15.268(1)(e) in a closed session, as that section relates to discussion of "settlement strategy in connection with specific pending litigation," the Board was otherwise entitled to go into closed session to consider "material exempt from disclosure," MCL 15.268(1)(h), which includes attorney-client communications. See MCL 15.243(1)(g) (exempting "[i]nformation or records subject to the attorney-client privilege" under the Freedom of Information Act, MCL 15.231 *et seq.*).

Lastly, plaintiffs contend that the Law Firm Letter is discoverable under the crime-fraud exception to the privilege. "The crime-fraud exception to the attorney-client privilege is predicated on the recognition that where the attorney-client relationship advances the criminal enterprise or fraud, the reasons supporting the privilege fail." *People v Paasche*, 207 Mich App 698, 705; 525 NW2d 914 (1994). "The attorney-client privilege must necessarily protect the confidences of wrongdoers, but the reasons for the protection—the centrality of open client and attorney communication to the proper functioning of our adversary system of justice—ceases to operate at a certain point, namely, where the desired advice refers not to prior wrongdoing, but to future wrongdoing." *Id.* (quotation marks and citation omitted; citation cleaned up). Aside from plaintiffs' characterizations of what defendants purportedly used the Law Firm Letter to do, i.e., commit perjury, there is no evidence or even insinuation that the Law Firm Letter itself contained advice concerning "future wrongdoing." See *id.* Indeed, if the Law Firm Letter is similar to the letter produced by plaintiffs, which they claim it is, the Law Firm Letter advises defendants how to properly comply with the OMA, not violate it. Thus, the crime-fraud exception to the attorney-client privilege did not apply, and the trial court did not abuse its discretion when it denied plaintiffs' motion to compel.

Affirmed. Defendants, as the prevailing parties, may tax costs. MCR 7.219(A).

/s/ Michael F. Gadola
/s/ Kirsten Frank Kelly
/s/ James Robert Redford