# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

SAMUEL LESHAWN JACKSON,

      Defendant-Appellant.

UNPUBLISHED
June 11, 2015

No. 319398
Saginaw Circuit Court
LC No. 12-038143-FJ

Before: RIORDAN, P.J., and DONOFRIO and BECKERING, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of assault with intent to murder, MCL 750.83, three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and one count of carrying a dangerous weapon with unlawful intent, MCL 750.226. He was sentenced to 235 months to 40 years for assault with intent to murder, 2 years for each felony-firearm conviction, and 30 months to 5 years for carrying a dangerous weapon. We affirm.

## I. FACTUAL BACKGROUND

The two victims—Marcel Wilson (Wilson) and Richard Fowler (Fowler)—were driving in Saginaw when they decided to stop at a gas station. Fowler went into the station, and surveillance video showed that J'ion Parker (Parker) left the store shortly thereafter. At the same station, Keondre Solomon (Solomon) was pumping gas into a white Dodge Charger. Parker got into the backseat of the Charger, and defendant was seated in the front passenger seat of the Charger.

Wilson and Fowler left the gas station and drove down Williamson Street when they noticed a car speeding up behind them. Suddenly, the Charger pulled alongside them, and the occupants began shooting at Wilson and Fowler. Eventually, both vehicles crashed. Fowler and Wilson were shot and severely wounded. They required multiple surgeries for the injuries they sustained in the shooting and crash.

-1-

Parker testified that, after the crash, he, Solomon, and defendant fled the scene.[1] He also testified that while they were running, defendant asked what to do with a gun and then he tossed it to Parker. He then just threw it away from himself. Parker later identified defendant as the shooter.

A small amount of blood was present above the front passenger seat of the Charger. DNA testing revealed it matched defendant's blood. Further, Solomon's girlfriend reported the Charger as stolen, and after searching her house, the police found a spent .40-caliber cartridge that matched the casings from the scene and from a gun Solomon turned over to the police.

A police officer also testified that defendant and Parker resided on the east side of Saginaw, and there were rivalries and conflicts between the east side and south side of Saginaw where the shooting victims resided.

Defendant was convicted of two counts of assault with intent to murder, three counts of felony-firearm, and carrying a dangerous weapon with unlawful intent. Defendant now appeals on several grounds.

## II. JURY SELECTION

### A. STANDARD OF REVIEW

Defendant first contends that the trial court erred when it excused prospective jurors for cause without first permitting him the opportunity to question them. MCL 600.1307a(1); MCL 600.1355; Const 1963, art 1, § 20. "We review for abuse of discretion a trial court's rulings on challenges for cause." *People v Williams*, 241 Mich App 519, 521; 616 NW2d 710 (2000). However, "once a party shows that a prospective juror falls within the parameters of one of the grounds enumerated in MCR 2.511(D), the trial court is without discretion to retain that juror, who must be excused for cause." *People v Eccles*, 260 Mich App 379, 383; 677 NW2d 76 (2004).

### B. ANALYSIS

At the beginning of jury selection, the trial court requested a list of prospective jurors who had been subjected to prosecution by the Saginaw County Prosecutor's Office. The trial court explained that it was going to examine each of the prospective jurors on the list individually, but without actually bringing them into the courtroom. The court indicated that it would consider the prosecutor's challenge for cause based on each prospective juror's criminal record. However, defense counsel objected, primarily contending that MCR 2.511(D)(10) was

---

[1] As will be discussed *infra*, Parker invoked the Fifth Amendment at defendant's trial.

After consulting with his attorney, Parker testified that he did not recall events that gave rise to the offense. The trial court declared Parker unavailable pursuant to MRE 804(a)(3). His preliminary examination testimony was read at trial.

overbroad because it did not provide for an inquiry into the potential bias of each prospective juror. Nevertheless, the trial court granted the prosecutor's request to dismiss 20 of the potential jurors for cause pursuant to MCR 2.511(D)(10).

"A prospective juror is subject to challenge for cause on any ground set forth in MCR 2.511(D) or for any other reason recognized by law." MCR 6.412(D)(1). Moreover, cause to excuse a prospective juror exists when he or she "has been accused by [the challenging party] in a criminal prosecution." MCR 2.511(D)(10). "If, after the examination of any juror, the court finds that a ground for challenging a juror for cause is present, the court on its own initiative should, or on motion of either party must, excuse the juror from the panel." MCR 6.412(D)(2).

Defendant does not contest that, pursuant to MCR 6.412(D) and MCR 2.511(D), there was cause to excuse jurors who had been subjected to prosecution by the Saginaw County Prosecutor's Office. Instead, he argues that he should have been permitted to question the jurors before dismissal. Defendant highlights the phrase "If, *after the examination of any juror*, the court finds" that grounds for cause are present, the court may dismiss the juror. MCR 6.412(D)(2) (emphasis added). However, defendant provides no support for the proposition that the *defendant* is entitled to examine each juror. In fact, the language in the court rule only refers to the trial court excusing the jurors after examination. Further, if grounds for challenging a juror for cause are present, the court "must" dismiss the prospective jurors. *Eccles*, 260 Mich App at 383.

Moreover, MCR 2.511(D) merely provides that "[a] juror challenged for cause *may* be directed to answer questions pertinent to the inquiry." (Emphasis added). This language denotes discretion. In other words, the trial court has discretion to allow such questioning, but defendant highlights no language that requires the trial court to permit such questioning.

Further, even if the prospective jurors were excused improperly, defendant has not demonstrated prejudice or that he was denied an impartial jury. "Failure to comply with the provisions of this chapter shall not . . . affect the validity of a jury verdict unless . . . the party demonstrates actual prejudice to his cause and unless the noncompliance is substantial." MCL 600.1354(1). In short, defendant fails to demonstrate how he was prejudiced in any way from the trial court's actions. He is not entitled to relief.

## III. ADMISSION OF EVIDENCE

### A. STANDARD OF REVIEW

Defendant next contends that the trial court erred in admitting evidence that was prejudicial to him. "This Court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion." *People v Dobek*, 274 Mich App 58, 93; 732 NW2d 546 (2007). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). When the decision involves a preliminary question of law, such as the interpretation of the Michigan Rules of Evidence, our review is *de novo*. *Dobek*, 274 Mich App at 93. Ultimately, "[a]n error in the admission or exclusion of evidence will not warrant reversal unless refusal to do so appears inconsistent with substantial justice or affects a substantial right of the

opposing party." *Id.* In other words, "reversal is only required if such an error is prejudicial" and "the appropriate inquiry focuses on the nature of the error and assesses its effect in light of the weight and strength of the untainted evidence." *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999). "[T]he effect of the error is evaluated by assessing it in the context of the untainted evidence to determine whether it is more probable than not that a different outcome would have resulted without the error." *Id.* at 495.

## B. PHOTOGRAPH

First, defendant argues that the trial court abused its discretion when admitting evidence regarding a possible association with a gang. He contends that it was improper for a police officer to testify about a group photo that depicted defendant and several others displaying hand signs associated with the gangs of the east and south sides of Saginaw.

However, there was no specific testimony about gangs, gang membership, gang culture, or that defendant acted in conformity with character traits commonly associated with gang members. Neither the detective nor any other witness testified that defendant or any of the involved parties were members of gangs. Rather, the prosecution's theory was that there was general animosity between neighborhoods and assaultive-type conduct occurring between the east and south sides, which was a possible explanation for defendant's motive in committing the crime. *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272, 286 (2008) ("Although motive is not an essential element of the crime, evidence of motive in a prosecution for murder is always relevant."). Defendant does not explain why this evidence was not relevant to show he was a willing participant in an apparent random act of violence. Further, the trial court mitigated any unfair prejudice when instructing the jury that there was no evidence that defendant was involved in these other assaultive acts. See *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

Moreover, any error in admitting this evidence was harmless beyond a reasonable doubt. *Lukity*, 460 Mich at 495. After seeing the victims at the gas station, defendant and his two companions initiated a car chase. Defendant then shot multiple times at the two victims, seriously wounding them. Parker testified that defendant was the shooter, and that defendant tossed him the gun when they were fleeing the scene. DNA evidence definitively placed defendant in the Charger. In sum, defendant was identified as the shooter and DNA evidence placed him in the vehicle.

When evaluating "the effect of the error . . . in the context of the untainted evidence," we find that it is not "more probable than not that a different outcome would have resulted without the error." *Lukity*, 460 Mich at 495.

## C. "SNITCH"

Defendant also contends that it was improper to admit evidence of a conversation Parker had with his mother. During the police interview, Parker whispered to his mother: "I can't live my life as no snitch, though. I can't do it. It would make me want to kill myself if I was a snitch. They gonna kill me if I snitch."

Although defendant claims it was error to admit this statement, he provides only cursory treatment of this issue with limited citation to supporting authority. "An appellant may not

merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

Moreover, there is no evidence that defendant, nor anyone associated with him, threatened Parker. In fact, upon admission of this evidence, the trial court immediately instructed the jury as follows:

> I'm going to give you a limiting instruction regarding that testimony, that evidence that you just heard, referring to Witness Parker's statements at the police station. That's been offered to explain why the witness may have been reluctant with the police, and there may be an issue of credibility as to that witness. And so you may consider the evidence as to the witness credibility.

> * * *

> All right. I just wanted to add a cautionary instruction, ladies and gentleman, also, that there is no evidence of threats of any kind by either of the defendants here, or of threats or intimidation of any kind, by them or anybody associated with them.

> So with that, again, it just may go to that witness's credibility, but it certainly doesn't implicate these defendants as having done or said anything.

"It is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Defendant has not demonstrated error requiring reversal.

## IV. PLEADING THE FIFTH AMENDMENT

### A. STANDARD OF REVIEW

Lastly, defendant contends that the prosecution erred in calling Parker to testify because it should have known that Parker would invoke his Fifth Amendment rights. Although we review preserved issues of prosecutorial misconduct *de novo* to determine if the prosecutor's statements denied defendant a fair and impartial trial, we review unpreserved issues for plain error. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010).

### B. ANALYSIS

"A lawyer may not knowingly offer inadmissible evidence or call a witness knowing that he will claim a valid privilege not to testify." *People v Paasche*, 207 Mich App 698, 709; 525 NW2d 914 (1994) (quotation marks and citation omitted). The rationale behind this rule is that the jury may draw an adverse inference against defendant if a witness invokes his Fifth Amendment rights. *Id.* Yet, in this case, there is no indication that the prosecutor knew Parker intended to plead the Fifth Amendment.

The prosecution knew that Parker had testified—without pleading the Fifth Amendment—at three separate preliminary examinations. While Parker told his mother that he would not "snitch," he then provided a statement to the police. Further, the prosecution's opening statement revealed its expectations that Parker would testify. The prosecution stated that it expected the jury would hear from Parker "one way or another." Although the prosecution expected Parker would be a reluctant witness or might not appear at trial, there is no indication that it knew Parker would invoke the Fifth Amendment. In fact, at the September 5, 2012 court proceeding, the prosecution asked the court to advise Parker that he was required to appear for trial or else he would be held in contempt and detained as a material witness.[2]

Further, immediately after Parker pleaded the Fifth, the trial court excused the jury and asked the prosecutor if he knew Parker "was going to do this." The prosecutor responded, "Absolutely not." Parker testified that he only told the prosecution that he "didn't remember nothing" and that he never spoke about the Fifth Amendment privilege.

Because there is no evidence that the prosecutor knew or even should have known that Parker was going to plead the Fifth Amendment, we find no error warranting reversal. *Paasche*, 207 Mich App at 709.

## V. CONCLUSION

Defendant has not established error warranting reversal in jury selection, the admission of evidence, or Parker's testimony. We affirm.

/s/ Michael J. Riordan
/s/ Pat M. Donofrio
/s/ Jane M. Beckering

---

[2] Although defendant states that a party may not contribute to a witness's unavailability, it is not clear what defendant is alleging, especially in light of prosecution's repeated attempts to ensure that Parker showed up at trial.