**IN RE: Carol K. ROSICH, Debtor.**

**Jeff A. Moyer, chapter 7 trustee, Plaintiff,**

**v.**

**John Jay Rosich and Carol K. Rosich, Defendants.**

**Case No. DG 13–06483**

**Adversary Pro. No. 15–80203**

United States Bankruptcy Court, W.D. Michigan.

Signed December 22, 2016

Andrew J. Gerdes, Andrew J. Gerdes, P.L.C., Lansing, MI, for Plaintiff.

Robert A. Stariha, Stariha Law Offices, P.C., Fremont, MI, for Defendant.

MEMORANDUM OF DECISION AND ORDER

PRESENT: HONORABLE SCOTT W. DALES, Chief United States Bankruptcy Judge

### I. INTRODUCTION

Robert A. Stariha, Esq., drafted the warranty deed at the center of this adver-

sary proceeding, helping his clients effect the real estate transfer that chapter 7 trustee Jeff A. Moyer (the "Trustee") now seeks to avoid as a fraudulent conveyance. To assist in proving his case, the Trustee moves to compel Mr. Stariha to testify (and produce documents) about his advice and other communications with his clients regarding their intent in transferring the property. *See* Plaintiff's Motion For Order (A) Compelling Robert A. Stariha, Esq. to Submit to a Deposition and to Provide Full Discovery Responses and (B) Ruling that the Attorney–Client Privilege Does Not Apply (the "Motion," ECF No. 14). Mr. and Mrs. Rosich (the "Defendants") and their counsel oppose the Motion.[1]

The court heard oral argument on December 14, 2016 in Grand Rapids, Michigan, and for the following reasons will grant the Motion, subject to the limits prescribed in this Memorandum of Decision and Order.

## II. BACKGROUND

The Debtor and her husband, in July, 2007, created a revocable, *inter vivos* trust[2] through which they evidently intended to hold property for estate and tax planning reasons, including real property located in Hesperia, Michigan (the "Michigan Property") which lies at the center of this adversary proceeding. The Defendants were the settlors, the trustees, and the beneficiaries of the Trust at its inception. At that time, they resided in South Carolina, and the Michigan Property was not their residence. In fact, Mr. Rosich alone—not Mrs. Rosich—owned the Michi-

gan Property just before he transferred it into the Trust.

Later, the couple moved from South Carolina and took up residence in the Michigan Property. In 2011, experiencing some health and financial problems, the Defendants consulted Mr. Stariha about their financial, Medicare, and estate planning issues. With Mr. Stariha's help, including his drafting of the Deed at the heart of this case, Mr. and Mrs. Rosich, as trustees of the Trust, transferred the Michigan Property from the Trust to themselves as tenants by the entireties. As the Defendants conceded in response to the Trustee's interrogatories, they took title to the Michigan Property in this fashion at least in part to limit the number of creditors who could reach it. *See* Motion, Exh. 1 (Def. Resp. to Pl. Interrog. No. 5).

Despite the admission regarding the Defendants' intent, the Trustee seeks to fortify the intent element of his fraudulent transfer case with Mr. Stariha's deposition testimony and any documents (including his notes) related to the transfer of the Michigan Property. The request, obviously, seeks to discover communications and other confidential information ordinarily protected by the attorney-client privilege.

Though initially expressing a willingness to cooperate, Mr. Stariha ultimately resisted giving any testimony or producing documents that might reveal any confidences or communications his clients shared with him in the course of his representation, which is ongoing. His resistance prompted the Trustee's counsel, albeit reluctantly, to file his Motion for an order invading the

---

1. For convenience, the court will also refer to Mrs. Rosich as "the Debtor." Her husband did not file a petition for relief under the Bankruptcy Code. In addition, the court will refer to the Warranty Deed dated May 26, 2011 (Exh. D to the Complaint) as the "Deed."

2. The Declaration of Trust dated July 7, 2007 (the "Trust") is attached as Exh. A to the Complaint.

attorney-client privilege based on the "crime-fraud exception."

### III. ANALYSIS

In support of the Motion, the Trustee relies on persuasive, local authority from the United States District Court for the Western District of Michigan, among other cases. *See, e.g., Estate of Page v. Slagh,* Slip Op. No. 1:06–CV–245, 2007 WL 1385957 (W.D. Mich. May 8, 2007). As Judge Quist observed in *Estate of Page*:

> The attorney client privilege does not cover communications made in furtherance of a crime or fraud. There is a two part test that the moving party must meet to invoke the crime fraud exception and obtain access to otherwise privileged attorney-client communications. "First, the [moving party] must make a *prima facie* showing that a sufficiently serious crime or fraud occurred to defeat the privilege; second, the [moving party] must establish some relationship between the communication at issue and the *prima facie* violation." *United States v. Collis,* 128 F.3d 313, 321 (6th Cir. 1997) (citing *In re Antitrust Grand Jury,* 805 F.2d 155, 164 (6th Cir.1986)) (internal quotations omitted).

*Estate of Page, supra,* at *1. Michigan law is to similar effect. *People v. Paasche,* 207 Mich.App. 698, 525 N.W.2d 914 (1995) (Neff, J.).

■ As Judge Quist recognized, a plan or scheme to defeat the rights of creditors, actionable under the fraudulent conveyance laws, qualifies as a predicate for invading the privilege, at least where the claim is premised on an actual intent theory. *Estate of Page, supra; see also Riggs Nat'l Bank v. Andrews (In re Andrews),* 186 B.R. 219 (Bankr. E.D. Va. 1995). Here, the Trustee has made out a *prima facie* case under Michigan's Uniform Fraudulent Transfer Act ("UFTA"), M.C.L. § 566.31

*et seq.,* premised largely on Defendants' admissions within their Answer (ECF No. 5) and their discovery responses (included as Exh. 1 to the Motion). Based on these admissions, and the court's review of the Trust document itself, the Trustee has certainly established the following "badges of fraud" upon which the court could infer fraudulent intent, as well as the other elements of his *prima facie* case of an actual fraudulent transfer under the UFTA:

- The Debtor had an interest in the Michigan Property while it was held in the Trust;
- The Debtor was insolvent at the time of the transfer from the Trust to the Debtor and her husband;
- The Debtor was being sued at the time of the transfer;
- The transfer was of virtually all (if not all) of the Debtor's non-exempt assets;
- The transfer was made to an insider (herself and her husband);
- The transfer was made for no or nominal consideration; and
- The transfer was motivated, in part, by the desire to place the Michigan Property out of the reach of her individual creditors.

Thus, the Trustee's Motion clears the first hurdle described in *Estate of Page* by documenting a *prima facie* case of fraud. Under the undisputed facts of the case, the Trustee easily surmounts the second hurdle: Mr. Stariha drafted the very deed that effected the challenged transfer; obviously after consulting with the Defendants, thereby establishing, *prima facie,* the relationship between the allegedly fraudulent transfer and his pre-transfer communications. *See* Complaint at Exh. D.

The Defendants' principal argument against the Motion, which the court rejected at the hearing when ruling on their

motion for judgment on the pleadings, was premised on their view that they did not *transfer* the Michigan Property, but only changed the nature of the Debtor's interest in it. The trust document, which colorably establishes the Debtor's interest in the Michigan Property while held in the Trust, and the Deed itself together refute the Defendants' main contention. The court is satisfied that the Trustee is entitled to invade the attorney-client privilege, at least to some extent. Moreover, although the Motion asks only for permission to depose Mr. Stariha about his conversations with the Defendants, the Trustee's counsel clarified at the hearing, without opposition, that he also intends to ask the Defendants questions about their conversations with Mr. Stariha. Today's order will permit him to inquire as provided herein.

Although the Trustee's strong showing in support of the Motion justifies his invasion of the attorney-client privilege, the court must still consider the scope of discovery and the examinations of Mr. Stariha and his clients.

The United States Supreme Court explained the theory of limiting the privilege for attorney-client communications used in furtherance of a crime or fraud as follows:

> The attorney-client privilege must necessarily protect the confidences of wrongdoers, but the reasons for the protection-the centrality of open client and attorney communication to the proper functioning of our adversary system of justice-"ceases to operate at a certain point, namely, where the desired advice refers not to prior wrongdoing, but to future wrongdoing."

*United States v. Zolin*, 491 U.S. 554, 562–63, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989)

(citations omitted). The Michigan Court of Appeals, in *Paasche*, recognized this same dichotomy between pre- and post-wrongdoing. *See Paasche*, 525 N.W.2d at 917–18.

■ Here, the gravamen of the Trustee's complaint is the alleged defrauding of creditors that occurred upon the transfer of the Michigan Property from the Trust to the Defendants. The supposed wrongdoing described in the Complaint, therefore, was complete upon the delivery of the Deed on or about May 26, 2011. It may be true, of course, that Mr. Stariha continued to represent the Defendants after the transfer and even in connection with their bankruptcy case, but the rationale for invading the privileged communication, which is focused on the Deed, does not warrant a wholesale incursion into his relationship with the Defendants and full disclosure of all privileged communications. As in *Paasche* and *Zolin*, any communication or advice about the Michigan Property, the Trust, and the Deed occurring *after* May 26, 2011 refers to prior "wrongdoing,"[3] not future wrongdoing, and remains protected by the attorney-client privilege.

Accordingly, the Trustee's invasion of the Defendants' attorney-client privilege will be limited to conversations and other communications between Mr. Stariha and the Defendants (as well as notes or other documents reflecting these communications): (1) that are related to the Defendants' motives for transferring the Michigan Property out of the Trust; and (2) that occurred (or relate to communications that occurred) on or before May 26, 2011.

## IV. CONCLUSION AND ORDER

The court is loath to invade the attorney-client privilege except upon the most

---

**3.** By using the word "wrongdoing" the court does not imply that it has reached a decision on the merits. Instead, the word reflects the *prima facie* nature of the Trustee's pretrial showing, using the language of the cited authorities.

persuasive *prima facie* presentation, as the Trustee has made in support of his Motion. Nothing in this Memorandum of Decision and Order, therefore, should be read as an invitation to drive a wedge between debtors and their attorneys in this District in connection with the preparation of bankruptcy petitions, schedules and related documents, or even bankruptcy planning more generally—all of which almost invariably involve advice regarding past missteps or misfortune, rather than future crimes or frauds.

Also, the court has not yet addressed whether or to what extent Mr. Stariha's role as a possible fact witness might disqualify him from representing the Defendants *at trial*, despite the suggestion in the Trustee's brief. *See* M.R.P.C. 3.7(a) (referring to disqualification of attorney as witness "at trial"). This is a question the parties, and perhaps the court, may consider closer to trial—not necessarily in the context of settlement or pretrial proceedings—as the text of the applicable rule indicates.

Furthermore, as Trustee's counsel candidly conceded during the hearing, the substantial admissions that warrant invading the privilege in this case also raise the possibility that extensive inquiry of Mr. Stariha or his clients may become "unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C). Similarly, given the expense as well as the burden that the discovery will place on the attorney-client relationship, the parties and the court must also keep in mind the principle of proportionality undergirding the discovery rules. Fed. R. Civ. P. 26(b)(1). Nevertheless, the court will address any such argument only if necessary and in response to a motion for protective order, based on a more complete record. To resolve the current Motion, it suffices to say that, on the strong and unusual showing in this case, the Trustee may inquire into the Defendants' intent in transferring the Michigan Property even if the inquiry touches on communications or information that would, ordinarily, be withheld under a claim of privilege.

Finally, it is worth reiterating that the *prima facie* case for avoidance which the Trustee offered in support of the Motion is not necessarily a harbinger of success on all counts of his Complaint (especially Counts III and IV for recovery and turnover). Avoidance and recovery are separate concepts under the Bankruptcy Code, *Suhar v. Burns (In re Burns)*, 322 F.3d 421, 427–29 (6th Cir. 2003), and the Debtor's exemption rights may limit the Trustee's authority to use the Michigan Property to pay claims, as the court and the parties discussed briefly during the hearing.[4] The unusual posture of this case—involving exempt property already included in the bankruptcy estate, and a potentially avoidable transfer with respect to which the Debtor is both a transferor and transferee—raises exceedingly complex is-

4. The court will not lightly countenance an end-run around its rules and procedures governing exemptions, or the statutory limits on its authority to address allegations of exemption-related misconduct. The deadline to object to the Debtor's exemption claim in the Michigan Property passed long ago—thirty days after October 24, 2013 when the Trustee closed the first meeting of creditors. *See* Fed. R. Bankr. P. 4003(b)(1); *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643–44, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992); *but see* Fed. R. Bankr. P. 4003(b)(2) (extending deadline for objecting to exemptions that are "fraudulently asserted"). It is not clear, moreover, how the Trustee can administer the Michigan Property (which the Debtor long ago claimed as exempt) consistent with recent instructions from the United States Supreme Court and the United States Court of Appeals for the Sixth Circuit. *See Law v. Siegel*, — U.S. ——, 134 S.Ct. 1188, 188 L.Ed.2d 146 (2014); *Ellmann v. Baker (In re Baker)*, 791 F.3d 677 (6th Cir. 2015).

sues of statutory construction which the court may be called upon to resolve at or before trial. This complexity and resulting uncertainty makes the case a good candidate for settlement.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion (ECF No. 14) is GRANTED as provided herein.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision & Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005–4 upon Carol K. Rosich, John Jay Rosich, Jeff A. Moyer, Esq., Andrew J. Gerdes, Esq., and Robert A. Stariha, Esq.

**IT IS SO ORDERED.**